Cecil PENDLETON, and William C. Jacobs and Fred A. Bee, his attorneys, Appellants,

v.

CENTRE COLLEGE OF KENTUCKY, Hon. Elizabeth Nickels, Silliman, Dishman & Nickels, Attorneys at Law, Appellees.

and

Cecil PENDLETON, Appellant,

v.

Gerald GRUBBS and John L. Holden, Appellees.

and

Gerald GRUBBS and John L. Holden, Appellants,

v.

Russell E. BROWN, Appellee.

Nos. 89–CA–0515–MR, 89–CA–1214–MR, 89–CA–2167 and 90–CA–0262–MR.

Court of Appeals of Kentucky.

Dec. 14, 1990.

Withdrawn and Reissued Feb. 15, 1991.

Discretionary Review Denied by Supreme Court Oct. 16, 1991.

Case Ordered Published by Supreme Court Oct. 16, 1991.

Fred A. Bee, Harrodsburg, William C. Jacobs, Lexington, for Pendleton.

Elizabeth Nickels, Silliman, Dishman & Nickels, Danville, for Centre College.

Jerry L. Foster, Liberty, for Grubbs and Holden.

Robert R. Baker, Rankin & Baker, Stanford, for Russell E. Brown.

Before CLAYTON, GUDGEL and MILLER, JJ.

MILLER, Judge.

These appeals spring from judgments of the Boyle (89–CA–0515–MR and 89–CA–

1214–MR) and the Casey (89–CA–2167–MR and 90–CA–0262–MR) Circuit Courts. All appeals are conflicts arising in the wake of *Pendleton v. Pendleton*, Ky., 531 S.W.2d 507 (1975), *vacated and remanded,* 431 U.S. 911, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977) (hereinafter *Pendleton I*).

The issues address legal niceties emanating from the U.S. Supreme Court's reversal in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), of the ancient doctrine that a bastard child cannot inherit from its father—a decision made, at least qualifiedly, retroactive in *Reed v. Campbell,* 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986). The doctrine was codified in Kentucky Revised Statute (KRS) 391.090 (now repealed).[1] We relate the saga as applicable to these appeals, after which we discuss and dispose of each appeal separately.

On September 29, 1956, one Bethel Rawlins gave birth, out of wedlock, to a male child destined to become a lightning rod in a protracted judicial storm. His name— Cecil Pendleton. In 1959, Bethel filed a bastardy proceeding styled *Ex rel. Bethel Rawlins [Rollins] v. Cornelius Pendleton* in the Fayette Quarterly Court, wherein Cornelius was adjudged the father of Cecil. The case was appealed through the Fayette Circuit Court and the Kentucky Court of Appeals—then our highest court. It was affirmed in *Pendleton v. Commonwealth, ex rel. Rawlins,* Ky., 349 S.W.2d 832 (1961), for reason the record was not timely filed in the circuit court.

On March 24, 1966, Cornelius died a single man. Cecil, then nine years of age, not

to become eighteen until September 29, 1974, was Cornelius's only child. In November 1971, Cecil, age fifteen, alleged himself Cornelius's sole heir and filed an action in the Fayette Circuit Court to recover real property owned by his father at the time of his death. He contended KRS 391.-090, barring his inheritance as a bastard child, was violative of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Cecil was unsuccessful in state court. *See Pendleton I.* He took his case to the United States Supreme Court. On May 16, 1977, the Court entered an order vacating and remanding in light of its then recently decided *Trimble v. Gordon,* 430 U.S. at 762, 97 S.Ct. at 1459, striking down an Illinois statute, similar to KRS 391.090, as violative of the Equal Protection Clause.

On remand, our Supreme Court, in *Pendleton v. Pendleton,* Ky., 560 S.W.2d 538 (1978) (hereinafter referred to as *Pendleton II*), declared the statute invalid. In so holding, the Court adopted a prospective application rule:

> Insofar as it declares the invalidity of KRS 391.090 this opinion shall have no retroactive effect upon the devolution of any title occurring before April 26, 1977 (the date of the *Trimble* opinion), except for those specific instances in which the dispositive constitutional issue raised in this case was then in the process of litigation.

*Id.* at 539.

Since Cecil's claim had evolved (at the time of Cornelius's death on March 24, 1966) before the 1977 *Trimble* decision, it was presumed no remedy existed.[2] The storm abated.

---

1. 391.090. BASTARDS—INHERITANCE FROM AND BY—EFFECT OF MARRIAGE OF PARENTS.—(1) The estate of a bastard shall descend and be distributed in the same manner as that of a person born in lawful wedlock, except that the inheritance shall go to the mother and her kindred and not to the father and his kindred.

(2) A bastard shall inherit only from his mother and his mother's kindred.

(3) If a man who has had a child by a woman afterward marries her, the child or its descendants, if recognized by him before or after marriage, shall be deemed legitimate.

2. Another action indirectly bearing on the cases at hand is that of *Cecil Pendleton v. Lexington Center Corporation, et al.,* Fayette Circuit Court No. 77–CI–2795. That action was filed by Cecil after the United States Supreme Court remanded *Pendleton I,* but before our state Supreme Court issued *Pendleton II,* setting forth the nonretroactive rule. Acting on the authority of *Pendleton II,* that *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), would not be retroactively applied, the trial judge dismissed by interlocutory order. On Cecil's motion, after *Reed v. Campbell,* 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), was rendered, the interlocutory order was vacated.

Then, in 1986, the United States Supreme Court issued its opinion in *Reed v. Campbell,* 476 U.S. at 852, 106 S.Ct. at 2234, holding that a prospective application rule, much as our state Supreme Court enunciated in *Pendleton II,* may, and did in that case, violate the Equal Protection Clause. At this point, Cecil was aroused. He discovered real property in both Boyle and Casey Counties (now owned by remote grantees), which Cornelius owned when he died in 1966. Cecil commenced the instant proceedings in Boyle County (Civil Action No. 88–CI–00028) and in Casey County (Civil Action No. 88–CI–000151) to recover the realty from the present owners. These proceedings ultimately spawned the four appeals now before this Court.

### *Boyle Appeal No. 89–CA–0515–MR*

This appeal questions the validity of a Kentucky Rule of Civil Procedure (CR) 12 rule dismissal based on the statute of limitations.[3]

On October 12, 1988, Cecil filed suit in Boyle Circuit Court against appellee, Centre College, a remote grantee of real property belonging to Cornelius at the time of his death, and having been sold by his "heirs" in 1966. (The property came into Centre's hands in 1967.) At the time of the 1966 sale, record title appeared in the names of Cornelius's heirs, pursuant to an affidavit of descent of record. This being before *Trimble,* Cecil, as an illegitimate child, was not deemed an heir.

■ The trial court dismissed Cecil's suit as barred by limitation, particularly citing KRS 413.010 and 413.020. A resolution of the dismissal therefore requires an interpretation of those statutes. Respectively, they provide as follows:

413.010. ACTION FOR RECOVERY OF REAL PROPERTY—FIFTEEN YEAR LIMITATION.—An action for the recovery of real property may be brought only within fifteen (15) years after the right to institute it first accrued to the plaintiff, or to the person through whom he claims.

413.020. ACTION FOR RECOVERY OF REAL PROPERTY—PLAINTIFF UNDER DISABILITY.—If, at the time the right of any person to bring an action for the recovery of real property first accrued, he was an infant or of unsound mind, he or the person claiming through him may, though the period of fifteen (15) years has expired, bring the action within three (3) years after the time the disability is removed.

We conclude the court correctly interpreted these provisions in dismissing on limitations. We agree with the interpretation set forth by Centre College that the fifteen-year period of limitation began to run against Cecil in 1966 when he first possessed the right to institute an action for recovery of the real property in question.

As indicated, the foregoing statutes are specifically attuned to real property. Cecil contends the statutes should be interpreted so as to commence the running of the period of limitation only after a person under disability acquires both the right and capacity to sue. It therefore follows, according to his reasoning, that since Cecil acquired no capacity to sue until obtaining majority, his action is timely, as the statutory period began running at that time. He directs us to numerous cases: *Philpot v. Stacy,* Ky., 371 S.W.2d 11 (1963) (medical malpractice); *Newby's Adm'r v. Warren's Adm'r,* 277 Ky. 338, 126 S.W.2d 436 (1939) (action against surety on bond); *Carter v. Harlan Hospital Ass'n,* 265 Ky. 452, 97 S.W.2d 9 (1936) (medical malpractice); *Turner v. Begley,* 239 Ky. 281, 39 S.W.2d 504 (1931) (disability based on insanity); and *Lexington–Fayette Urban County Government v. Abney,* Ky.App., 748 S.W.2d 376 (1988) (action to recover delinquent taxes). We deem these authorities not controlling in the instant case. The statutes with which we deal are specifically directed to the recovery of real property, and while it may be true that statutes of limitations not involving realty may be predicated upon the right and capacity to sue, we do not think KRS 413.010 and .020 should be so inter-

---

**3.** Kentucky Rule of Civil Procedure 11 sanctions are implicated in this appeal, but addressed with Boyle Appeal No. 89–CA–1214–MR.

preted. Rather, we think the cases of *Horn v. Montgomery*, 305 Ky. 275, 203 S.W.2d 58 (1947), and *Campbell v. Whisman*, 183 Ky. 256, 209 S.W. 27 (1919), are controlling.[4] In conformance with these authorities, we hold the fifteen-year limitation period begins to run when the right to institute an action for recovery of real property first occurs. This is true, notwithstanding the holder of the right is under the age of majority, in which case, he can avail himself of the saving provision of Section .020, if need be. Of course, if the fifteen-year period extends beyond the three-year grace period, the saving provision is rendered inconsequential.

■ Having concluded the trial court was correct in dismissing Cecil's suit as barred by the statute, we nevertheless address the application of the impact of *Reed v. Campbell*, 476 U.S. at 852, 106 S.Ct. at 2234, on Cecil's claim. In our view, that decision does not dislodge the nonretroactive rule laid down by our state Supreme Court in *Pendleton II.* In *Reed*, the estate was open and the Court, at 855–856, 106 S.Ct. at 2237, had this to say:

> After an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate process.

For these reasons, we affirm the CR 12 dismissal of the complaint on this appeal.

*Boyle Appeal No. 89–CA–1214–MR and Boyle Appeal No. 89–CA–0515–MR*

■ We turn to the question of CR 11 sanctions on Cecil and his counsel. The trial court used CR 11 as a vehicle to award attorney fees to Centre and its counsel. The complexity of this litigation, *inter alia*, leads us to believe that CR 11 sanctions are inappropriate. Imposition constituted an abuse of discretion. *See Clark Equipment*

*Co. v. Bowman*, Ky.App., 762 S.W.2d 417 (1988).

For this reason, we reverse the CR 11 sanctions on these appeals.

*Casey Appeal No. 89–CA–2167–MR*

This action, filed October 26, 1988, and dismissed on the statute of limitations, was an attempt by Cecil to recover, from a remote grantee, real property located in Casey County. We adopt the holding in Boyle Appeal No. 89–CA–0515–MR: The action was barred by the statute of limitations, and, in addition, was not maintainable under the precepts of *Reed v. Campbell*, 476 U.S. at 852, 106 S.Ct. at 2234.

For these reasons, we affirm on this appeal.

*Casey Appeal No. 90–CA–0262–MR*

This appeal presents an interesting question in a venerable field of law. Appellee, Russell E. Brown, is a former owner of the land in Casey County which was the subject of Cecil's attack in Casey Appeal No. 89–CA–2167–MR. On or about October 16, 1975, Brown, by general warranty deed, conveyed the property to Gerald Grubbs and John Holden, who were to become the object of Cecil's attack to recover the land. Of course, Grubbs and Holden successfully defended. Grubbs and Holden then "third-party'd" Brown to recover the cost (attorney fees) of defending their title.

KRS 382.030 provides:

GENERAL WARRANTY—WORDS THAT CONSTITUTE.—A covenant by a grantor in a deed, "that he will warrant the property hereby conveyed," or words of like import, or the words "with warranty," or "with general warranty," in any deed, have the same effect as if the grantor had covenanted that he, his heirs and personal representatives, would forever warrant and defend the property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of all persons whatever.

---

4. In all candor, we should note that the interpretation we place upon KRS 413.010 and .020 may appear unduly restrictive, depending, of course, upon the particular set of facts. In this regard, it should be noted that the statutes were enacted when the age of majority was twenty-one.

The trial court, in face of this statute, failed to find a breach of the general warranty, and dismissed Grubbs and Holden's claim against Brown, thus precipitating this appeal.

Our examination of relevant authority leads us to conclude that an action cannot be maintained by a vendee of land upon warranty of title until he is either evicted or his title is adjudged inferior in a suit to recover the land. *See Ward v. Johnson*, 272 Ky. 234, 113 S.W.2d 1132 (1938).

For these reasons, we affirm on this appeal.

All concur.