October 3, 1991

289

# IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE ESTATE OF: ) APPEAL NO. 90-045
) CIVIL ACTION NO. 90-490
MANUEL FAUSTO ALDAN, )
) OPINION
Deceased. )
)

Argued and submitted March 6, 1991

Counsel for Appellant: Charles K. Novo-Gradac
 WHITE, NOVO-GRADAC, and MANGLONA
 P.O. Box 222 CHRB
 Saipan, MP 96950

Counsel for Appellees: Kenneth L. Govendo
 P.O. Box 2377
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Associate Justices.

VILLAGOMEZ, Justice:

This is an appeal by the administratrix of the estate of Manuel F. Aldan ("Aldan"), deceased, from a bench ruling[1] of the Superior Court that (1) appellees, Domitilia C. Govendo and Thomas Camacho ("Domitilia and Thomas" or "appellees"), are the

---

[1] The bench ruling of the trial court is not set forth in a separate order and is found only in the transcript.

illegitimate children of Aldan and (2) that the statutes of limitations under the Uniform Parentage Act ("Act"), 8 CMC §§ 1706(a)(2) and 1707, do not bar appellees' inheritance claim in the estate of Aldan.

Aldan died intestate on March 21, 1971. A petition to probate his estate was not filed until May 9, 1990. Domitilia and Thomas subsequently filed a claim that, as natural children of Aldan, they are entitled to share in his estate.

The administratrix, Josepha A. Fields, denied the claim, contending that Domitilia and Thomas are not the children of Aldan, and further contending that, even if they are Aldan's children, 8 CMC §§ 1706(a)(2) or 1707 bars their claim.

A hearing was held on the question of appellees' claim as heirs. The court, applying a clear and convincing standard, found that Domitilia and Thomas are the natural children of Aldan and thus entitled to share in his estate.[2] In addition, the court decided that 8 CMC §§ 1706(a)(2) and 1707 do not apply and do not bar the appellees' claim of inheritance.

The administratrix appeals the decision only with respect to the statute of limitations.

---

[2] The appellants do not assign as error the court's factual finding that appellees are children of the decedent. The record shows that such finding is supported by substantial evidence.

## FACTS

Monica Camacho was first married to Lino Blanco. They had two children named Maria Rosa Blanco and Maria Lisa Blanco. Lino Blanco passed away in 1942. Monica then married her second husband, Francisco Duenas, in 1946 or 1947. They had one child named Cecilia Camacho Duenas who was born on January 1, 1948.

After Cecilia was born, Francisco Duenas left Saipan on a ship, as a merchant marine, and has not been heard from or seen since.

A few years after Francisco's departure, Monica successively gave birth to two sons fathered by Francisco Deleon Guerrero.[3] They are David Camacho, who was born in 1952, and Ricardo Camacho, who was born in 1954.[4]

Monica later gave birth to Domitilia on December 4, 1956, and to Thomas on January 1, 1960. Monica testified that Aldan was the natural father of these two. She further testified that Aldan admitted to her that he was the father of the two children and that he regularly visited the children at her house.

## ISSUE and STANDARD OF REVIEW

The issue on appeal is whether 8 CMC § 1706(a)(2) or 8 CMC §

---

[3] Before that, she had another child from a Mexican man, not her husband, whose name she could not remember at the time of the hearing.

[4] The trial court in In re the Estate of Francisco C. Deleon Guerrero, C.T.C. Civ. Action No. 87-294 (April 13, 1988) (Appeal filed), declared Ricardo to be the illegitimate child of Francisco. David was not contested as one of Francisco's heirs.

292

1707 bars the appellees' claim of inheritance. This is a question of law which we review de novo. In re Estate of Jose P. Cabrera, No. 90-044 (N.M.I. July 31, 1991).

## ANALYSIS

### I.

The administratrix argues that appellees are presumed to be the children of Monica's second husband, Francisco Duenas ("Francisco"), pursuant to 8 CMC § 1704(a)(1),[5] since Monica has never been divorced from Francisco and Francisco has never been judicially declared dead before Domitilia and Thomas were born. Therefore, under 8 CMC § 1706(a)(2),[6] an action should have been filed to declare the non-existence of such presumed father and child relationship no later than five (5) years after each child's

---

[5] § 1704. Presumption of Paternity.

(a) A man is presumed to be the natural father of a child if:

(1) he and the child's mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;

[6] § 1706. Determination of Father and Child Relationship; Who May Bring Action; When Action May Be Brought.

(a) A child, his natural mother, or a man presumed to be his natural father, under Paragraph (1), (2), or (3) of Section 1704, may bring an action: . . .

(2) for the purpose of declaring the non-existence of the father and child relationship presumed under Paragraph (1), (2), or (3) of Section 1704 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth . . . .

293

birth. Since Domitilia and Thomas' claim of inheritance was filed more than five (5) years after their birth and more than five years after the effective date of the Act,[7] their claim is statutorily barred.

For two reasons we find this argument unpersuasive.

First, the facts of this case support the common law principle[8] that Francisco was presumed dead (seven years of unexplained absence) before Domitilia and Thomas were born. Francisco has not been heard from or seen since 1948 or 1949. In his years of absence, it was physically impossible for Francisco to have been their father. In addition, Monica gave birth to three other children, not fathered by Francisco, before Domitilia and Thomas were born.

Under 8 CMC § 2106(d),[9] codifying the common law presumption of death, Francisco was presumed dead by 1953 or 1954. Domitilia, the older child, was born two years after Francisco was presumptively dead.

Under 8 CMC § 1704(a)(1), a husband is not presumed to be the father of a child born over 300 days after the husband's death.

---

[7] The Act became effective on April 1, 1985. The claim was filed on June 1, 1990.

[8] 22A Am.Jur.2d Death, § 551 (1988).

[9] § 2106. Evidence as to Death or Status.

(d) A person who is absent for a continuous period of five years, during which the person has not been heard from, whose absence is not satisfactorily explained after diligent search or inquiry, is presumed to be dead . . . .

Here, both children were born more than 300 days after their mother's husband was presumed dead. Even if the common law presumption of death after seven years of absence were to be applied, both children would still have been born after Francisco was presumed dead.

Second, the Act (and its limitations period) came into effect in 1985, at least twenty-five (25) years after Domitilia and Thomas were born, fourteen (14) years after Manuel F. Aldan had passed away, and approximately thirty-seven (37) years after Monica's husband left on a ship and was never heard from again. We find no reason why, after the Act came into effect, Domitilia and Thomas (as adult persons) should file an action to declare non-existence of paternity by Francisco who had been gone for 37 years and who was not presumed to be their father.

The probate action was not filed until more than five years after the Act came into effect. The filing of the probate action naturally triggered the filing of their claim of inheritance.

For the above reasons, we hold that Francisco was not the natural or a presumed father of Domitilia and Thomas. Therefore, 8 CMC § 1706(a)(2), which requires the filing of an action to declare non-existence of a father and child relationship, within five years after a child's birth, does not apply to this case.

II.

The administratrix alternatively argues that even if 8 CMC §

1706(a)(2) does not bar appellees' claim, 8 CMC § 1707[10] does. She asserts that although the probate court has the authority to determine who the illegitimate children of Aldan are, it may do so only if the claim of heirship is filed within the time limitation provided by 8 CMC § 1707. That is, three years after reaching the age of majority.[11] In other words, the claim must be filed before the child reaches the age of twenty-one (21). Once a child is over the age of twenty-one, he loses his right to claim by inheritance from his natural father if no paternity action had been filed by such age.[12]

For the reasons set forth below, we also find this argument unpersuasive.

First, Aldan passed away in 1971, when Domitilia was 14 and Thomas was 11 years of age. The Act did not exist then and the two were not statutorily required to file any paternity action (e.g. for child support) by a certain period of time. When Domitilia

---

[10] § 1707. <u>Statute of Limitations</u>.

An action to determine the existence of the father and child relationship <u>may not be brought more than three years after the child reaches the age of majority</u>. Sections 1706 and 1707 do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law to distribution and closing of decedents' estates or to the determination of heirship, or otherwise. (Emphasis added.)

[11] Eighteen years is the age of majority. 8 CMC § 1106.

[12] Except that under § 1706(b) an action may be brought "<u>at any time</u> for the purpose of determining the <u>existence</u> or <u>non-existence</u> of the father and child relationship presumed under Paragraph (4) or (5) of Section 1704." (Emphasis added.) Aldan is not a presumed father under Paragraph (4) and (5) of §1704. That makes the facts of this case unique because neither Francisco nor Aldan is a presumed father of Appellees.

reached the age of 21 in 1977 and Thomas in 1981, there was still no Act in existence. In 1985, when the Act became effective, both were already past the age of 21. However, no action to probate Aldan's estate had been filed until subsequently on May 9, 1990, over three years after the Act became effective. It was that action that naturally triggered the filing of the Appellee's claim of inheritance.

Under these facts, it would be a violation of due process[13] to preclude, by statute, Domitilia and Thomas' rights as illegitimate children to claim their inheritance, simply because they had reached the age of 21 when the statute came into effect. Second, our probate code (unlike other jurisdictions) contains no limitation of action.[14] Estates of people who died twenty, thirty, and forty years ago may be probated at any time. Illegitimate children who are thirty, forty, or fifty years of age have not had the opportunity to claim their inheritance unless and until a probate of their natural fathers' estates are filed. Under these circumstances, we interpret the Act not to cut off any rights of inheritance of the Appellees prior to the filing of the probate

_____

[13] § 5. <u>Due Process</u>.

No person shall be deprived of life, liberty or property without due process of law. (NMI Constitution, Art. I)

[14] § 1707 of the Act assumes (erroneously) that the CNMI probate law contains a limitation of action. It provides, "Sections 1706 and 1707 do not <u>extend the time within which a right of inheritance</u> or a right to a succession <u>may be asserted</u> beyond the time provided by law to distribution and closing of decedents' estates or to the determination of heirship, or otherwise." (Emphasis added.)

case. We note that the Act does not specifically provide that its limitations shall apply in the probate of the estate of persons who died before the Act became effective.

Third, the Act does not state that it is to apply retroactively, i.e. to those who have already reached the age of 21 on the effective date of the Act. To do so would implicate due process rights. We, therefore, hold that the Act applies prospectively. Wabol v. Muna, 2 CR 963 (D.N.M.I. App.Div. 1987) (Statutory laws and constitutional provisions apply prospectively unless there is a clear manifestation of intent that they should be applied retroactively.) Since Domitilia and Thomas were already over the age of 21 and Aldan had died, when the Act became effective, its limitations do not apply to them.

Fourth, before the passage of the Act, Chamorro customary laws, governing inheritance rights, applied.[15] In Re Estate of Cabrera, No. 90-044 (N.M.I. July 3, 1991). Under Chamorro custom, an illegitimate child ordinarily inherits from his or her natural father. See, A. Spoehr, Saipan: The Ethnology of a War-Devastated Island, 141 (Chicago Natural History Museum, 1954). Such custom has been codified in our Probate Code, which expressly grants illegitimate children the right to inherit from their natural father. See 8 CMC §§ 2107(c) and 2918(b)(2). Thus to cut off the appellees' rights to inherit from their natural father, because they did not file a paternity claim before they reached the age of

---

[15] Based on the name "Manuel Fausto Aldan" we presume that the decedent is a Chamorro.

298

twenty-one (when the Act did not exist at the time), would violate their constitutional right to equal protection of the laws under the NMI Constitution.[16] Reed v. Campbell, 476 U.S. 852 (1986). (Under the Fourteenth Amendment, the interest in avoiding unjustified discrimination against children born out of wedlock should be given controlling effect.).

 Our probate code specifically provides for determination of father and child relationship[17] and has no limitations bar. 8 CMC § 1707 was intended not to extend the time within which such right of inheritance or succession may be asserted. In other words, once the probate case is completed, a paternity action under the Act may not reopen the case. We conclude that 8 CMC § 1707 does not apply to this case and the trial court did not err.

---

[16] Article 1. Personal Rights.

Section 6: Equal Protection. No person shall be denied the equal protection of the laws. No person shall be denied the enjoyment of civil rights or be discriminated against in the exercise thereof on account of race, color, religion, ancestry or sex.

[17] 8 CMC § 2918. Meaning of Child.

. . .

(b) In cases not covered by (a), above, a person born out of wedlock is a child of the mother. That person is also a child of the father, if:

. . .

(2) the paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof, except that the paternity established under this subparagraph (b) is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his and has not refused to support the child.

We **AFFIRM** the decision of the trial court.

Entered this 3rd day of _____October_____, 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice