In the ESTATE OF Ralph Oliver WRIGHT, Deceased.

Theresa L. WASSER and Deby Elliott, Appellants,

v.

Gary W. COLLINS and Thaine Denton Wright, as Co–Personal Representatives,

Thaine Kenton Wright and Karen Sims, Respondents.

No. WD 52720.

Missouri Court of Appeals, Western District.

June 24, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1997.

Application to Transfer Denied Sept. 30, 1997.

Therese M. Schuele, Spencer Fane Britt & Browne, Kansas City, for appellants.

Gregory A. Carpenter, Gunn, Shank & Stover, Gary W. Collins, Kansas City, for respondents.

Before HANNA, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

Ralph Wright died on June 23, 1995. On or about July 5, 1995, a Statement of Death, Wright's will (the Will), and an Application for Letters were filed in the Probate Division of the Circuit Court of Clay County by Co–Personal Representatives, Thaine Kenton Wright and Gary W. Collins.[1] The Application for Letters identified only two beneficia-

---

**1.** The Will does not contain a residuary clause; therefore, the bulk of Wright's estate will pass by intestate succession.

ries under the Will: Thaine Wright, biological son of the deceased and Karen Sims, adopted daughter of the deceased. An attachment to the Application for Letters was filed on July 7, 1995, identifying three legatees under the Will: Bonnie Firth, Teri Wasser, and Deby Elliot. A motion to admit the Will to probate was filed on or about July 7, 1995. All beneficiaries and legatees were provided with notice that a hearing on the motion would be held on July 13, 1995. Following the hearing, the Will was admitted to probate. Notice of the Appointment of Personal Representative was first published on July 20, 1995.

Teri Wasser and Deby Elliot (the Petitioners) subsequently filed a Petition for Determination of Heirship on February 2, 1996, asking the Court to declare them daughters of the decedent and heirs to his estate.[2] On February 23, 1996, the Estate filed an Answer to the petition, asserting among other defenses, the statute of limitations found in § 473.070.2.[3] Thereafter, the Estate filed a motion to dismiss the Petition for Determination of Heirship on the grounds that it was barred by the statute of limitations found in § 473.070.2 or, in the alternative, § 210.828.1.[4] The decedent's surviving legitimate children also moved to dismiss the petition for failure to state a claim upon which relief could be granted.

The Clay County Circuit Court, Probate Division heard argument on the motions on

March 20, 1996. The Court took the matter under advisement and thereafter dismissed the petition based on the statute of limitations found in § 473.070.2.[5] On May 6, 1996, the Court entered an Order Nunc Pro Tunc finalizing its order. Petitioners raise two points on appeal.

In their first point, Petitioners claim the trial court erred in treating their petition as an action in equity and dismissing it pursuant to § 473.070.2. According to Petitioners, a determination of heirship is a matter of law, not equity, rendering § 473.070.2 inapplicable to their cause of action.

There are two statutory provisions relating to decedents' estates which deal with determination of heirship and/or paternity. Section 473.663 permits an action to determine heirship where no administration has been commenced on the decedent's estate, nor any will offered for probate, within one year after the decedent's death. This section authorizes the court to determine the heirs of the decedent and their respective interests in the decedent's property. Section 473.663 is consistent with, and complementary to § 473.070.1, which provides that no will shall be admitted to probate nor any estate administration granted unless application is made to the court within one year "from the death of the decedent."[6] § 473.070.1. Section 473.070.1 precludes administration of a decedent's estate if administration is not commenced within one year of the decedent's

---

**2.** Petitioners purport to be the illegitimate daughters of the deceased. At no time do they allege their mother was married to the deceased.

**3.** All statutory references are to RSMO 1994, unless otherwise noted. Section 473.070.2 provided, in pertinent part:

Any action in equity to establish an interest in the estate by descent must be filed within six months of the date of first publication of letters or be forever barred.

Section 473.070 was amended by S.B. No. 494 in 1996, effective May 23, 1996, and now provides, in pertinent part:

Any action to establish an interest in an estate by descent shall be filed prior to the expiration of the applicable objection period for a final settlement pursuant to section 473.590 or for a statement of account pursuant to subsection 4 of section 473.840.

The former provision is applicable to the case at bar.

**4.** Under that section, any action to determine the existence of a father-child relationship as to a child who has no presumed father must be brought by the child's eighteenth birthday. § 210.828.1.

**5.** The Court originally entered its order dismissing the Petition for Determination of Heirship on March 21, 1996, but entered an amended order on April 2, 1996.

**6.** That § 473.070.1 and § 473.663 are consistent and complementary to each other is beyond cavil. It is evidenced by the fact that prior to adoption of H.B. 145 in 1989, § 473.070.1 provided that administration could be commenced within three years of the decedent's death, and § 473.663 authorized an action to determine heirship only where no administration had been commenced within three years.

death, while § 473.663 evidences the Legislature's recognition that circumstances can arise where, for whatever reason, a decedent's heirs and their interests in the decedent's property must be determined after the time permitted for opening a decedent's estate. Consequently, it is clear that § 473.663 is inapplicable to the case at bar in that Ralph Wright's will was admitted to probate and administration commenced on his estate within about one month of his death.

■■■ The second statutory provision dealing with the subject is § 474.060, which is part of the Probate Code relating to intestate succession and wills. Section 474.060.2 provides, in relevant part:

> [A] person born out of wedlock is a child of the mother. That person is also a child of the father, if either of the following occur:
>
> (1) The natural parents participated in a marriage ceremony before or after the birth of the child, even though the attempted marriage is void;
>
> (2) The paternity is established by an adjudication before the death of the father, or is established thereafter by clear and convincing proof. . . .

The plain language of this statutory provision authorizes establishing paternity during probate administration. *In re Carl Nocita,* 914 S.W.2d 358, 359 (Mo. banc 1996). Thus, § 474.060.2 provides a mechanism for determination of the relationship of parent and child during the course of probate administration, and inasmuch as the Petitioners herein claim to be illegitimate children of the decedent, we conclude their petition was authorized by this section. However, this does not take the Petitioners action outside the limitations of § 473.070.2.

*Nocita* dealt with whether an illegitimate child can prove paternity during probate, beyond the statute of limitations in the Parentage Act. In that case, Carl Nocita died intestate on August 2, 1991, survived by one sister, two nieces, two nephews, and also by Anthony Mahon, born April 22, 1956. Mahon, asserting he was the illegitimate son of the decedent, filed for letters of administration shortly thereafter. The Nocita family sought to dismiss Mahon's claims based on § 210.828.1 of the Parentage Act, which provides that any action to determine the existence of a father-child relationship as to a child who has no presumed father must be brought by the child's eighteenth birthday. Mahon contended, on the other hand, that § 474.060.2, *supra,* of the Probate Code authorized his action. The trial court ruled that § 210.828.1 did not bar Mahon's claim and found that Mahon was the sole child of Nocita and was, therefore, entitled to the entire estate.

In affirming the trial court's decision, our Supreme Court first observed that the Legislature passed the Parentage Act without conforming the Probate Code to it. Consequently, the Court concluded the General Assembly "refused to make the Parentage Act the exclusive means to establish paternity for probate." *Id.* at 359. Moreover, in noting that § 474.060.2 of the Probate Code authorized Mahon's action, the Court stated that § 473.070.2 "allows his action within 'six months of the date of first publication of letters . . . .' " *Id.*

■■■ In the case at bar, the Petitioners concede that as illegitimate daughters, they are seeking a statutory determination of the parent-child relationship pursuant to § 474.060.2. While they assert that their action is one at law, rather than one in equity, such that the prohibition of § 473.070.2 ("Any action *in equity* to establish and interest in the estate by descent . . . .") does not apply, their contention must fail for the reason that Mahon's claim in *Nocita* was pursuant to § 474.060.2 and our Supreme Court treated the limitations provision of § 473.070.2 as applicable thereto. As a result, it was incumbent upon the Petitioners to file their action within "six months of the date of first publication of letters . . . ." § 473.070.2. They failed to do so. Their Petition to Determine Heirship was filed on February 2, 1996, more than six months after first publication on July 20, 1995, and was, therefore, properly dismissed as being time barred. Point denied.

In their final point, Petitioners contend that "if § 473.070.2 applies only to illegitimate children, it violates the Constitutional

guarantees of equal protection." This contention is premised on the underlying argument that § 473.070.2 is applicable only to illegitimate children because § 474.060 does not require legitimate children to file an action to establish paternity.

Article V, § 3 of the Missouri Constitution provides that the Missouri Supreme Court has exclusive appellate jurisdiction in all cases involving the validity of a state statute. The entire case must be transferred to the Supreme Court if any point on appeal involves such a question. *In re Estate of Potashnick*, 841 S.W.2d 714, 718 (Mo.App. E.D.1992). However, the constitutional question must be substantial, meaning that it involves some fair doubt and reasonable room for controversy, as opposed to being merely colorable. *Id.* The parties do not raise the issue of jurisdiction but if we have no jurisdiction over the appeal, we must transfer it to the Supreme Court. *Stenger v. Great Southern Savs. & Loan Ass'n*, 677 S.W.2d 376, 381–82 (Mo.App.S.D.1984). Our independent review of Petitioners' contention and the analysis that follows compel the conclusion that the constitutional question is merely colorable and, therefore, does not require transfer of the appeal.

Petitioners rely exclusively on *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), in which the United States Supreme Court struck down an Illinois statute for violating the equal protection clause because it permitted illegitimate children to inherit by intestate succession only from their mothers, even though legitimate children could take by intestacy from both mother and father. *Id.* at 763, 97 S.Ct. at 1461. The Court found this statute was constitutionally flawed because it completely and unnecessarily excluded illegitimate children from intestate succession through their fathers.

Petitioners contend that § 473.070.2 is similarly flawed. We disagree. Section 473.070.2 does not exclude illegitimate children from inheriting through intestate succession. Rather, it imposes a six month limitation on any action, including, but not limited to, that of an illegitimate child, to establish an interest in an estate by descent. § 473.070.2. Moreover, the United States Supreme Court, in *Reed v. Campbell*, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), has noted that such procedural requirements are necessary and appropriate for the orderly settlement and disposition of estates:

> [A] rather clear distinction ... has emerged from our cases considering the constitutionality of statutory provisions that impose special burdens on illegitimate children. In these cases, we have unambiguously concluded that a State may not justify discriminatory treatment of illegitimates in order to express its disapproval of their parents' misconduct. We have, however, also recognized that there is a permissible basis for some "distinctions made in part on the basis of legitimacy;" specifically we have upheld statutory provisions that have an evident and substantial relation to the State's interest in providing for the orderly and just distribution of a decedent's property at death.
>
> The state interest in the orderly disposition of decedent's estates may justify the imposition of special requirements upon an illegitimate child who asserts a right to inherit from her father, and, of course, it justified the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted.

*Id.* at 856, 106 S.Ct. at 2237 (citations omitted). The expeditious resolution of probate proceedings is a legitimate State interest. *Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 489, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). Section 473.070.2 does not apply only to illegitimate children but rather is a general limitation as to actions intended to establish an interest in an estate by descent. As such, it is designed to bring about the expeditious resolution of probate proceedings by limiting the time in which such claims may be asserted. Consequently, the statute does not violate, as Petitioners assert, "the Constitutional guarantees of equal protection." Point denied.

The judgment is affirmed.

All concur.