## Richmond

BETTY JO RANKIN JOHNSON, ET AL.

V.

MARGUERITE BRANSON, ADMINISTRATRIX, ETC., ET AL.

Record No. 820372.

September 7, 1984.

Present: All the Justices.

*Ralph M. Dillow, Jr.*, for appellants.
No brief or argument for appellees.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the question is whether the evidence is sufficient to establish that a claimant to an estate is the illegitimate child and sole heir at law of an intestate decedent.

The decedent, Roy T. Compton, a resident of Bristol, Virginia, died February 21, 1980. On March 10, 1980, Donald R. Wise filed an affidavit with the clerk of the trial court, pursuant to Code § 64.1-5.1(3), asserting that he was born in West Virginia October 7, 1933, that he was the son of Compton and Mary Wise, and that he was entitled to Compton's estate as his biological son. On motion of Wise, who was a resident of Delaware, Marguerite Branson (hereafter, the Administratrix), qualified as administratrix of the estate and executed a bond, with corporate surety thereon, in the penalty of $100,000. On March 12, 1980, a certified copy of Wise's West Virginia birth certificate, listing Compton as his father, was filed with the clerk. Two days later, an affidavit of Mary Wise Barton was filed, stating that she was Wise's mother and that Compton was his father. Filed subsequently was an affidavit of William H. Davis, stating that he had been a fellow employee of Compton, that as a lay preacher he had conducted Compton's funeral service, that he had known Compton and Mary Wise in Berwind, West Virginia, that it was generally believed in that community that Compton was the father of Mary

Wise's first child, and that as the child grew he bore a "striking likeness" to Compton.

On August 20, 1981, Betty Jo Rankin Johnson, the decedent's niece; Flora Compton Walker, a sister; Carl C. Compton, a brother; Dorothy Ann Rankin Farr, a niece; Kenneth Curtis Compton, a nephew; Linda Carol Compton Cain, a niece; Billie Jean Compton Ward, a niece; James Robert Compton, a great-nephew; George Thomas Compton, a great-nephew; Margaret Theresa Compton, a great-niece; and Elizabeth Susan Compton, a great-niece, filed a bill of complaint in the trial court against the Administratrix and Wise. The complainants alleged that they were Compton's only lawful heirs, that Wise was not his son, and that they had attempted unsuccessfully to have the Administratrix distribute to them the assets of the estate. They sought to have the court determine the lawful heirs of the decedent; in addition, they asked the court to remove the Administratrix and to replace her with one that they nominated.

In a joint answer, the Administratrix and Wise averred that Wise was the son of Compton and Mary Wise Barton. The Administratrix sought the guidance of the court in distributing the estate. Wise sought an adjudication that he was the beneficiary entitled to receive the entire net proceeds of the estate.

The chancellor heard the evidence *ore tenus*. No transcript was made, but the evidence was summarized in the final decree entered November 30, 1981, in which the court, ruling that there was "sufficient evidence" to find that Wise is the natural son of Compton and his sole heir at law, so ordered. Neither Mary Wise Barton nor William H. Davis testified in person or by deposition, and the decree expressly stated that the court did not consider the affidavits of these two individuals as evidence of paternity. On appeal, complainants below challenge the sufficiency of the evidence supporting the ruling of the trial court.

Two witnesses testified for complainants. Betty Jo Rankin Johnson, one of the complainants, testified that Compton was not the father of Donald Ray Wise. In addition, she gave the names of the complainants and their relationships to Compton.

Carl Compton, another complainant, testified that he was a brother of the decedent. He said that he lived in Bluefield, West Virginia, but that he had previously lived in Berwind, West Virginia, "almost all of his life." Replying to a question, he said that Wise was not the decedent's biological son. Explaining this an-

swer, the witness testified, without objection, that his brother once said that he had heard a rumor about his being Wise's father, but that Wise was not his child, " 'and they are not going to put that baby on me.' " The witness further testified that the decedent knew he was born in Richlands, Virginia, where he had family whom he visited "very often."

Two witnesses testified for the respondents. Donald R. Wise testified that he was born in Welch, West Virginia, October 7, 1933. Over objection, he testified that he was Roy T. Compton's son, and he introduced in evidence a certified copy of his birth certificate and a copy of sections of the 1931 West Virginia Code. Robert Henry Branson, an employee of the Sheriff's Department in Bristol, Virginia, testified that he grew up in Berwind, West Virginia, that he and Compton worked together in Berwind from approximately 1940 to 1960, and that Compton, who was born in October of 1910, was about 22 years of age in 1933.

Donald Ray Wise's birth certificate contained typed answers to various questions. These answers stated that his parents were not married, that his mother was Mary Wise, 19, that his father was Roy Compton, 22, that both the mother and father lived in Berwind, and that the mother's birthplace was Berwind. The space for the father's birthplace contained a question mark that was handwritten in parentheses.

Chapter 16, Art. 5, § 14(h) of the 1931 West Virginia Code required that the father's full name be entered on a birth certificate. This provision stated, however, that "if the child is illegitimate, the name or residence of, or other identifying details relating to, the putative father shall not be entered without his consent. . . ."

Section 64.1-5.1(2) of the Code of Virginia provides that a person born out of wedlock is a child of the mother. Under § 64.1-5.1(2)(b) such a person is also a child of the father if the paternity is established by clear and convincing evidence as set forth in § 64.1-5.2. Section 64.1-5.2 limits the evidence to six specified categories of conduct by the putative father, of which only the following is relevant:

2. That he gave consent to a physician or other person, not including the mother, charged with the responsibility of securing information for the preparation of a birth record that his name be used as the father of the child upon the birth records of the child.

Code § 64.1-5.2(2).

■ In addition, Code § 64.1-5.1(3) requires that no claim of succession by an illegitimate child shall be recognized in the settlement of a decedent's estate unless the child or someone acting for him shall, within one year of the parent's death, file an affidavit alleging parenthood and file an action seeking adjudication of parenthood. The limitation period does not apply if the parenthood is "established by a birth record prepared upon information given by or at the request of" the parent in question.

■ In the present case, an affidavit alleging parenthood was filed within one year after Compton's death, but an action seeking adjudication of parenthood has never been filed by Wise or someone acting for him. In such an action, of course, the burden of proof would rest on Wise, the person alleging parenthood.

■ We will assume, without deciding, that Wise's affirmative response to the bill of complaint filed against him and the Administratrix more than one year after Compton's death constitutes an action seeking adjudication of parenthood under Code § 64.1-5.1(3). The burden was on Wise, however, regardless of the form of the proceeding, to establish paternity by showing that Compton gave consent to someone, other than the mother, responsible for providing vital statistics for Wise's birth certificate, that his name be listed as the father. We conclude that Wise failed to prove by clear and convincing evidence that Compton gave such consent.

■ There is no affirmative evidence that Compton ever consented to have his name entered on Wise's birth certificate as the child's father. There is only the evidence that his name was so listed at a time when the West Virginia statute prohibited such listing without his consent. There is no evidence that the person furnishing the information for the birth certificate complied with this law by obtaining Compton's consent. Even in her *ex parte* affidavit, Wise's mother did not assert that Compton had consented to the entry of his name as the child's father. Indeed, the fact that the preparer of the information for Wise's birth certificate did not know Compton's birthplace strongly suggests that Compton did not supply the information. The uncontradicted evidence was that Compton knew where he was born and frequently returned there to see relatives.

There is no evidence that Compton ever had any contact with Wise. There is no evidence that Wise ever used Compton's surname, or that Compton ever claimed Wise as a dependent for tax

purposes. There is no evidence that Compton ever admitted paternity in a court proceeding or in writing under oath. We hold that the mere listing of Compton's name on the West Virginia birth certificate is insufficient to prove paternity under our statute requiring such proof to be made by clear and convincing evidence.

We will reverse the final decree of the trial court ruling that Wise is Compton's son and sole heir at law and remand the case for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*