## CIRCUIT COURT OF STAFFORD COUNTY

Michael Eugene Hart

v.

Clarence Eugene Posey
and Mary Ann Hart Rose

July 14, 1993

Case No. (Chancery) 599–90

BY JUDGE JAMES H. HALEY, JR.

On April 27, 1977, in *Trimble v. Gordon*, 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459 (1977), the United States Supreme Court held that a legitimacy distinction for intestate succession violated the equal protection clause of the 14th Amendment to the United States Constitution. Such a distinction existed in then Virginia Code § 64.1–5, but "*Trimble* implicitly declared [that Code section] unconstitutional . . . ." *Marshall v. Bird*, 230 Va. 89, 93, 334 S.E.2d 573, 576 (1985).

The issue here for resolution is whether *Trimble v. Gordon* should be granted retrospective application in Virginia.

This matter comes before the court upon exceptions to a commissioner's report. The principles applicable to this procedural posture are well established. A commissioner's report is to be sustained if supported by the evidence. *Jarvis v. Tonkin*, 238 Va. 115, 300 S.E.2d 900, 904 (1989); § 8.01–610. But a chancellor is not bound by the commissioner's recommendation. Rather:

> It is the chancellor's duty to review the evidence according to the correct principles of law and arrive at his own conclusions. *Green v. Green*, 199 Va. 927, 931, 103 S.E.2d 202, 204 (1958); *Raiford v. Raiford*, 193 Va. 221, 229–30, 68 S.E.2d 888, 893–94 (1952).

*Lawrence v. Lawrence*, 212 Va. 44, 47, 181 S.E.2d 640, 643 (1971).

As an obvious condition precedent to any application of *Trimble v. Gordon*, a claimant must establish the parent-child relationship by proper evidence. Responding to *Trimble*, the legislature repealed § 64.1–5, replacing it with § 64.1–5.1 and § 64.1–5.2. The court in *Johnson v. Branson*, 228 Va. 65, 69–70, 319 S.E.2d 735, 736–737 (1984), summarized the new legislation:

> Section 64.1–5.1(2) of the Code of Virginia provides that a person born out of wedlock is a child of the mother. Under § 64.1–5.1(2)(b), such a person is also a child of the father if the paternity is established by clear and convincing evidence as set forth in § 64.1–5.2. Section 64.1–5.2 limits the evidence to six[1] specified categories of conduct by the putative father . . . .

Code § 64.1–5.2(2).

> In addition, Code § 64.1–5.1(3) requires that no claim of succession by an illegitimate child shall be recognized in the settlement of a decedent's estate unless the child or someone acting for him shall, within one year of the parent's death, file an affidavit alleging parenthood and file an action seeking adjudication of parenthood. The limitation period does not apply if the parenthood is "established by a birth record prepared upon information given by or at the request of" the parent in question.

Clarence Junior Hart died intestate in 1971 seised of 33 acres in Stafford County he had acquired by deed dated July 23, 1957, and recorded in Deed Book 105 at Page 106. At the time of his death, he was living upon the 33 acres and was thus then a resident of Stafford County. He was survived by a daughter, Mary Ann Hart Rose, respondent herein, born of his marriage to Mildred Hart.

Michael Eugene Hart, complainant, maintains he and Clarence Eugene Posey, also a respondent, are the sons of Clarence Junior Hart, "who were born of his [non-marital] relationship with Virgie Posey Hart [now Virgie Welch]." Accordingly, Michael Eugene Hart asks the court to declare him the owner of a one-third undivided interest in the

---

[1] In 1991 the legislature added two additional categories, genetic blood grouping and medical/anthropological evidence.

33 acres. Michael Eugene Hart was six years old at the death of Clarence Junior Hart. He filed this action on September 13, 1990. Michael Eugene Hart has lived on the 33 acres all his life.

Respondent Mary Ann Hart Rose of Richmond, Virginia, testified that at the time of her father's death in 1971, she did not know he owned 33 acres and did not learn that he did until 1982 or 1983. Prior thereto, she only thought he had one or two acres. She further testified she was unaware Michael Eugene Hart had any interest in the property until 1982 or 1983, even though he had lived continuously on the property since the death of Clarence Junior Hart in 1971 with his mother, Virgie Posey Hart, who each year thereafter paid the real property taxes on the 33 acres. (Transcript, pp. 50–51). There have been no conveyances from or encumbrances upon the 33 acres since the death of Clarence Junior Hart in 1971. No one has ever qualified as administrator of the estate of Clarence Junior Hart.

The commissioner found that Michael Eugene Hart had shown by clear and convincing evidence that he was the son of Clarence Junior Hart "for purposes of Code § 64.1–5.2." Respondent's exception to this finding by the commissioner is overruled.[2]

Michael Eugene Hart did not file an affidavit alleging parenthood within one year of the death of Clarence Junior Hart as required by § 64.1–5.1(3). This limitation does not apply, however:

> where the relationship between the child born out of wedlock and the parent in question is (i) established by a birth record prepared upon information given by or at the request of such parent . . . .

The commissioner found that Michael Eugene Hart failed to produce clear and convincing evidence of parenthood in the manner mandated by the quoted portion of § 64.1–5.1(3). To this finding Michael Eugene Hart excepts.

> Clear and convincing evidence . . . is intermediate, being more than a mere preponderance but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

---

[2] In oral argument, counsel for respondent Mary Ann Hart Rose graciously admitted there was "no evidence" in the record contradicting Michael Eugene Hart's claim he was the son of Clarence Junior Hart.

*Cross v. Ledbord*, 161 Ohio St. 469, 477, 120 N.E. 118, 123 (1954), quoted with approval in *Fred C. Walker Agency, Inc. v. Lucas*, 215 Va. 535, 540–541, 211 S.E.2d 88, 92 (1975).

The evidence Michael Eugene Hart offered to avoid the one-year limitation in § 64.1–5.1(3) is uncontradicted. His mother Virginia Posey Hart (now Virgie Welch) testified as follows:

Q. I would like to show you a document that's marked Plaintiff's Exhibit # 1 [Birth Certificate]. Are you familiar with that document?

A. Yes, I am.

Q. Who provided the information on that document?

A. He did.

Q. Who's he?

A. Clarence Hart.

Q. And how do you know that?

A. Because him and a woman in the hospital were right there with me in the room.

Q. This indicates this was changed by an affidavit, corrected by affidavit in September of 1965.

A. Yes, he went to a notary public up there. It was spelled wrong. His name and Michael's name was wrong . . . .

A. He [Clarence Junior Hart] took it [the affidavit] to a notary down there in King George. (Transcript, pages 23–30).

Q. You testified that Clarence Junior Hart was providing that information.

A. Yes, he was.

Q. Do you recall what information Clarence Junior Hart did, in fact, give to this lady?

A. I wanted Michael to be in my name, but he wanted Michael to have his name . . . .

A. I wanted Michael to carry the name Posey, but he would not go along with it, so he put down the name Hart. (Transcript, pages 38–40).

Introduced without objection as complainant's Exhibit 1 was the birth certificate derived from the information given in the hospital, which shows the father to be *Carl* Junior Hart, age 30, place of birth in Maryland, and occupation as plumber's helper.

By subsequent affidavit, the original birth certificate was amended to change "Eugean" to "Eugene" and "Carl Junior Hart" to "Clarence Junior Hart." Complainant's Exhibit 4. This exhibit was kept with Virginia Posey Hart's "important papers" and was given to Michael Eugene Hart by his mother. His mother testified that she and Clarence Junior Hart were present when the affidavit was notarized (though she cannot remember which signed it) before a notary in King George County in 1965. She further testified she knew no one named "Carl" Junior Hart. The affidavit was obviously sent to the Bureau of Vital Statistics because the original birth certificate was in fact amended by that agency. The whereabouts of the affidavit itself are unknown.

In *Johnson v. Branson*, 228 Va. 65, 319 S.E.2d 735 (1984), the Supreme Court held that the evidence therein adduced failed to show by the clear and convincing standard that the birth record was prepared upon information given by or at the request of Compton, the parent in question, as is required by § 64.1–5.1(3). Respondent's reliance on *Johnson* is not well founded. A comparison of the evidence in the instant case, as set forth above, shows a marked distinction to that summarized in *Johnson*, as follows:

> There is no affirmative evidence that Compton ever consented to have his name entered on Wise's birth certificate as the child's father. There is only the evidence that his name was so listed at a time when the West Virginia statute prohibited such listing without his consent. There is no evidence that the person furnishing the information for the birth certificate complied with this law by obtaining Compton's consent. Even in her *ex parte* affidavit, Wise's mother did not assert that Compton had consented to the entry of his name as the child's father. Indeed, the fact that the preparer of the information for Wise's birth certificate did not know Compton's birthplace strongly suggests that Compton did not supply the information. The uncontradicted evidence was that Compton knew where he was born and frequently returned there to see relatives.

228 Va. at 70, 319 S.E.2d at 737.

This court finds that by clear and convincing evidence, it has been shown that the child/parent relationship between Michael Eugene Hart and Clarence Junior Hart has "been established by a birth record prepared upon information given by or at the request of . . ." Clarence Junior Hart, as is required by § 64.1–5.1(3).

Complainant's exception to the commissioner's finding on this point is accordingly sustained.

We thus turn to the question of retrospective application of *Trimble v. Gordon*, apparently one of first impression in Virginia. As noted above, *Trimble* was decided in 1977, and Clarence Junior Hart died in 1971.

The commentator in 21 C.J.S., *Courts*, § 148, pp. 176–177, nn. 68–69, 74–76, states:

> As a general rule . . . judicial decisions . . . operate both retroactively and prospectively . . . .
>
> While retrospectivity is sometimes proper, it is not required, and a court can make rulings prospective in the interest of justice.

*See also*, 20 Am. Jur. 2d, *Courts*, § 233, p. 562, n. 16; *Darnell v. Commonwealth*, 12 Va. App. 948, 952, 408 S.E.2d 540, 542 (1991); *Cash v. Califano*, 621 F.2d 626, 628 (4th Cir. 1980).

Though not cited by either party, or by the courts in other jurisdictions, the United States Supreme Court has addressed the propriety of retrospective application of *Trimble v. Gordon*.

In *Reed v. Campbell*, 476 U.S. 852, 90 L. Ed. 2d 858, 106 S. Ct. 2234 (1986), *reh. den.*, 478 U.S. 1031, 92 L. Ed. 2d 766, 107 S. Ct. 11, the putative father, Ricker, had died intestate on December 22, 1976, survived by five legitimate children and by Reed, who was illegitimate. As in Virginia at the time, § 42 of the Texas Probate Code only permitted inheritance by illegitimates through the mother. In 1978, while the administration of Ricker's estate was pendant, Reed asserted her claim, arguing that even though her father had died four months before *Trimble v. Gordon* was decided on April 27, 1977, that decision should be retroactively applied. The Supreme Court of Texas refused such application. In reversing, the United States Supreme Court stated:

> Although the question presented in this case is framed in terms of "retroactivity," its answer is governed by a rather

clear distinction that has emerged from our cases considering the constitutionality of statutory provisions that impose special burdens on illegitimate children . . . .

The state interest in the orderly disposition of decedents' estates may justify the imposition of special requirements upon an illegitimate child who asserts a right to inherit from her father, and, of course, it justifies the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted . . . .

Although the administration of Prince Ricker's estate was in progress . . . the test applied by the Texas court resulted in the denial of appellant's claim because of the conjunction of two facts: (1) her father died before April 26, 1977, and (2) her claim was filed after April 26, 1977.

There is nothing in the record to explain why these two facts, either separately or in combination, should have prevented the applicability of *Trimble* . . . .

The state interest in the orderly administration of Prince Ricker's estate would have been served equally well regardless of how the merits of the claim were resolved. In this case, then, neither the date of his death nor the date the claim was filed had any impact on the relevant state interest in orderly administration; their conjunction similarly had no impact on that state interest.

90 L. Ed. 2d at 862–864, 476 U.S. at 854–857.

Several state courts have likewise addressed the question. In *Mitchell v. Hardwick*, 297 S.C. 48, 374 S.E.2d 681 (1988), the Supreme Court of South Carolina stated:

In *Wilson v. Jones*, 281 S.C. 230, 314 S.E.2d 341 (1984), this court held that . . . *Trimble* would be given prospective effect only and that only those illegitimate children whose fathers died after April 26, 1977, the date of the *Trimble* decision, may inherit from their father's estate. We reasoned that "retroactive application of *Trimble* would disrupt the orderly process of probate." 314 S.E.2d at 343 . . . .

The dispositive issue is whether the prospective only application enunciated in *Wilson* should be modified to allow limited retroactive application where certain factors are met . . . .

Relying upon *Williamson v. Gane*, 176 W. Va. 443 (1986), and *Marshall v. Marshall*, 670 S.W.2d 213 (Tenn. 1984), both courts having earlier reached the same result with the same limitations upon retrospective application of *Trimble*, the South Carolina Supreme Court concluded:

We now hold that the *Wilson* opinion is hereby modified to allow retroactive application of the *Trimble* decision in the limited circumstances where the following conditions are met: (1) innocent persons will not be adversely affected because of their detrimental reliance on the old rule; (2) the paternity of the child has been conclusively established either by court order or decree issued prior to the death of the father or by an instrument signed by the father acknowledging paternity; and (3) the state administration is subject to further resolution.

374 S.E.2d at 682–683.

In *Marshall v. Bird*, 230 Va. 89, 92–93, 334 S.E.2d 573, 575–576 (1985), the Virginia Supreme Court stated that:

*Trimble* effectively invalidated former Code § 64.1–5 . . . . Although the General Assembly had not repealed Code § 64.1–5 at the time of (the putative father's) death, *Trimble* implicitly declared it unconstitutional almost three months previously.

Thus, the court by implication held that the constitutional right of illegitimate children to inherit from the putative father should be recognized as of the April 26, 1977, decision date of *Trimble*, rather than as of the subsequent date of adoption of the Virginia statutes curing the constitutional infirmity. The *Marshall* court did not, however, address or preclude retrospective application of *Trimble v. Gordon*.

Nonetheless, in other contexts, Virginia courts have set forth principles as to whether a constitutional decision of the United States Supreme Court should be granted retrospective application.

"In the civil context, retroactive application of such decisions is governed by the three-pronged test announced in *Chevron Oil v. Mason* . . . ." *Harper v. Virginia Department of Taxation*, 241 Va. 232, 235, 401 S.E.2d 868 (1991), cert. granted, jdmt. vacated and remanded, 115 L. Ed. 2d 1049, 111 S. Ct. 2883, — U.S. — (1991). Upon remand, 242 Va. 322, 410 S.E.2d 629 (1991).

In *Department of Highways v. Williams*, 1 Va. App. 349, 352–353, 338 S.E.2d 660, 662–663 (1986), the Court of Appeals summarized:

> In *Chevron Oil Co. v. Mason*, 404 U.S. 97 (1971), the Supreme Court set out three factors for consideration in determining whether a judicial decision should be given only prospective effect: First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further retard its operation . . . ." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity."

In addition, the Supreme Court in *Quick v. Harris*, 214 Va. 632, 633–634, 202 S.E.2d 869, 871 (1974), concisely noted:

> The three-fold test for prospectivity when new standards of constitutional dimension are mandated by the Supreme Court requires appraisal of (a) the purpose to be served by the new standards, (b) the extent of reliance on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. (Citations omitted).

It will be noted that the limitations placed upon retrospective application of *Trimble* by the South Carolina Supreme Court in *Mitchell v. Hardwick* reflect much the same policy considerations as enumerated in the above other contexts by Virginia courts. Respecting those considerations, this court holds that *Trimble v. Gordon* is to be applied retroactively when:

1. Claimant has established paternity of the putative father in the manner prescribed by Code § 64.1–5.1 and Code § 64.1–5.2 and

2. Either there has been no administration of the intestate decedent's estate, or administration of the same is not final as a matter of law,[3] and

3. No third parties have justifiably relied to their detriment upon the old law.

In *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 175, 31 L. Ed. 2d 768, 92 S. Ct. 1400 (1972), Justice Powell of Virginia wrote:

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth, and penalizing the illegitimate child is an ineffectual — as well as an unjust — way of deterring the parent.

This court has found that Michael Eugene Hart has established according to law that Clarence Junior Hart was his father. The evidence shows that with respect to the 33 acres, there has been no detrimental reliance by third parties upon the old rule. There has been no administration of the intestate estate of Clarence Junior Hart.

Accordingly, the court holds that Michael Eugene Hart is the owner of a one-third interest in the 33 acres of which Clarence Junior Hart was seised upon his death.

The $1,175.00 cost of the guardian ad litem and the commissioner's fee of $1,400.00 are each approved. Both shall be divided evenly between Michael Eugene Hart and Mary Ann Hart Rose and paid within 90 days of the entry of a final decree herein.

---

[3] Note that Code § 64.1–5.1(3) refers to "the settlement of any decedent's estate . . . ."