COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia

**PUBLISHED**

MARISSA LORENZ, ET AL.

OPINION BY
v.       Record No. 1683-23-4                    JUDGE LISA M. LORISH
                                                 NOVEMBER 6, 2024
RACHEL WETZEL PARKER, ET AL.


FROM THE CIRCUIT COURT OF CLARKE COUNTY
Alexander R. Iden, Judge

Lisa M. Campo (Pierre Greene; Hale Ball Murphy, PLC, on briefs),
for appellants.

Stephen C. Price (Theresa D. Small; McCandlish & Lillard, PC, on
brief), for appellee Rachel Wetzel Parker.

No brief or argument for appellees Lee Sattler, Co-Administrator
of the Estate of Clayton Paul Givens and Mary Beth Sattler,
Co-Administrator of the Estate of Clayton Paul Givens.


After Clayton Paul Givens died, Rachel Wetzel Parker filed an affidavit with the Circuit

Court of Clarke County alleging that she was his daughter born out-of-wedlock. Marissa Lorenz

and Noelle Gatto, Givens' half-sisters, challenge the sufficiency of this affidavit under Code

§ 64.2-102(4). They also argue that the court erred in admitting a DNA test as an exhibit in the

paternity proceeding and giving it weight without expert testimony. Because the affidavit

"allege[d] parenthood," we find that it was sufficient under the statute. Code § 64.2-102(4).

And we see no error in the trial court's admission of the DNA test or reliance on the same. Thus,

we affirm.

BACKGROUND

Clayton Paul Givens died intestate. He was unmarried but had two half-sisters, Marissa Lorenz and Noelle Gatto (the "sisters"). Months after Givens' death, Rachel Wetzel Parker filed a complaint in the Circuit Court of Clarke County seeking an adjudication of parenthood and alleging that she is Givens' daughter born out of wedlock to Givens and Shari Allyson Wetzel in 1987. The sisters answered Parker's complaint, noting that the Givens family had no knowledge of Parker's existence, and chronologizing their discovery of Parker as Givens' "secret" adult daughter.

After initiating discovery, Parker sent the sisters a request for admissions. One request asked them to "[a]dmit that the document attached hereto as Exhibit A is a true, authentic, accurate, and admissible copy of the DNA Test Report evidencing that Clayton Paul Givens is the biological father of Rachel Wetzel Parker." The sisters responded that "[d]efendants Marissa Lorenz and Noelle Gatto believe that the document speaks for itself."

Parker then filed an affidavit, under Code § 64.2-102(4), stating Givens' name and date of death in addition to her own name, address, and age. The affidavit named Parker as the "decedent's heir-at-law" and described her relationship to Givens as "daughter." The affidavit was signed and sworn to by Parker and signed by a Notary Public. Parker also filed a list of exhibits that she wished to have admitted at trial, including her affidavit, the DNA test report, and the sisters' response to Parker's request for admissions.

At the bench trial, Parker asked the court to admit her affidavit as an exhibit. The sisters objected to its admission on the grounds that it failed to allege parenthood as required by Code § 64.2-102(4). They argued that the affidavit did not use the word "parenthood" and that it was

instead an "heir at law" affidavit.[1] They also argued that the affidavit was insufficient because it failed to allege facts asserting parenthood and merely asserted the legal conclusion that Parker is Givens' heir. In response, Parker argued that the affidavit was sufficient because it described Parker, her address, and her relationship to Givens as his daughter, the "obverse of saying . . . that he's my parent." The court found that the affidavit was sufficient under the statute and admitted it as an exhibit.

Parker also sought to introduce as an exhibit the sisters' statement that "the document speaks for itself," which they made in response to Parker's request for admission that the copy of the DNA test report was "a true, authentic, accurate, and admissible copy of the DNA Test Report evidencing that Clayton Paul Givens is the biological father of Rachel Wetzel Parker." Parker argued that this response was an admission of authenticity and admissibility of the document. Included in this exhibit was the DNA test report itself, which stated that there was a 99.9997% probability of Givens' paternity. The sisters argued that their response could not have "admitted" admissibility under Rule 4:11 of the Rules of the Supreme Court of Virginia because decisions about admissibility must be made at the time the evidence is offered in court. They also argued that the statement "the document speaks for itself" is not an admission, but was "at most" "nonresponsive" to the question. The court ruled that matters are admitted unless a party provides a timely answer or objection, and therefore a nonresponsive response was tantamount to an admission.[2] The court also admitted the DNA test as an exhibit after finding it was

---

[1] Code § 64.2-509 requires the personal representative of a decedent to "furnish a list of heirs under oath in accordance with a form provided to each clerk of court by the Office of the Executive Secretary."

[2] Lorenz and Gatto later denied the accuracy, truth, and authenticity of the report in supplemental and amended responses to Parker's first request for admissions, but they did so without moving the court to amend or withdraw their initial responses. The court observed that the merits of the action would be subserved by allowing the amendment because the action is

authenticated by the sisters' Rule 4:11 response, that it was relevant, and that there was a proper foundation.

After Parker presented her evidence, the sisters moved to strike.[3]  They argued that Parker failed to provide clear and convincing evidence of paternity in substantial part because she did not offer an expert to explain the DNA test results.  The sisters also argued that there was no evidence about the chain of custody for the blood used for the test, or evidence about who performed the test, or how it was performed.  They renewed their objection to the admission of the DNA test as evidence, reiterating that they did not admit to the truth of its content through their response to Parker's request for admissions.  After the court denied the motion to strike, the sisters introduced evidence of their own.

The court found that Parker established by clear and convincing evidence, through reliable genetic testing and other exhibits and testimony, that she was Givens' biological daughter and heir-at-law.  The court also concluded that Parker petitioned for adjudication of parenthood with the required affidavit within one year of Givens' death.  The sisters appeal.

---

about paternity, but denied the sisters' request to amend the admission because they did not seek to amend their response until the day of trial, which prejudiced Parker.  The sisters do not contend on appeal that the trial court erred in refusing to allow them to amend their response.

[3] The sisters do not argue on appeal that the evidence was otherwise insufficient to show paternity, so we only review the evidence briefly for context.  In addition to the DNA test, Parker introduced evidence that Givens kept a Father's Day card that Parker sent him 12 years ago, that he kept a photograph on his refrigerator of himself with Parker, and that he kept a list of contacts with Parker's name and phone number, next to which appeared in parentheses, "daughter."  Two witnesses testified that Givens told them he had a daughter.  Parker's mother also testified that she was romantically involved with Givens at the time of Rachel's conception.  And Parker herself testified about her relationship with Givens, including testimony that she had four to five one-on-one meetings with him.

ANALYSIS

The sisters challenge whether Parker's affidavit complied with Code § 64.2-102(4). We take up this question first, then turn to the evidentiary challenges.

I. The affidavit is sufficient under Code § 64.2-102(4).

Code § 64.2-102 provides a set of rules for establishing a parent-child relationship relevant to determining rights in and to property under deeds, wills, trusts, and other instruments. Relevant to this case, subsection (4) governs "claim[s] of succession based upon the relationship between a child born out of wedlock and a deceased parent of such child":

> No claim of succession based upon the relationship between a child born out of wedlock and a deceased parent of such child shall be recognized unless, within one year of the date of the death of such parent (i) an affidavit by such child or by someone acting for such child alleging such parenthood has been filed in the clerk's office of the circuit court of the jurisdiction wherein the property affected by such claim is located and (ii) an action seeking adjudication of parenthood is filed in an appropriate circuit court.

Code § 64.2-102(4).[4] We review a lower court's interpretation of a statute de novo. *Sarafin v. Commonwealth*, 288 Va. 320, 325 (2014).

We start with the plain meaning of the statute. *See Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 705 (2012) ("In any case involving statutory construction we begin with the language of the statute."). And we interpret the statute in light of the surrounding provisions. *See REVI, LLC v. Chi. Title Ins. Co.*, 290 Va. 203, 208 (2015) ("[I]t is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." (alteration in original) (quoting *VEPCO v. Bd. of Cnty. Supervisors*, 226 Va. 382, 387-88 (1983))). Code § 64.2-102(4) requires a child born out of wedlock to timely file an affidavit "alleging . . . parenthood" within a year of the death of the parent. But this affidavit cannot

---

[4] The statute also creates certain exceptions to the one-year limitation not relevant here.

establish parentage on its own.  The purported child must also timely file an "action seeking

adjudication of parenthood" in the appropriate court.  Code § 64.2-102(4).  If these threshold

requirements are met, a different statute provides a non-exhaustive list of evidence a court may

consider at trial to determine whether paternity is "established by clear and convincing

evidence."  Code § 64.2-103.  It is in this later adjudicative stage that the details of the birth,

conception, and relationship between the child and parent are relevant.[5]

The sisters acknowledge that Parker's affidavit identifies her as Givens' daughter, but

nevertheless argue that the affidavit is insufficient because it "lacks a declaration of facts

concerning a parent-child relationship between her and Givens."  They suggest that the affidavit

discussed in *Johnson v. Branson*, 228 Va. 65 (1984), defines the statutory bounds of Code

§ 64.2-102(4).  There, the child born out of wedlock filed an affidavit stating the date and place

of his birth, "that he was the son of [his purported father] and [mother]," and that he was entitled

to his father's estate "as his biological son."  *Johnson*, 228 Va. at 67.  In contrast, the sisters

characterize Parker's affidavit as a mere "list of heirs," and argue that *Belton v. Crudup*, 273 Va.

368 (2007), supports the contention that such a list may be insufficient under the statute.

According to the sisters, an allegation that one is an "heir" to an estate is meaningfully different

from an allegation of parenthood.

We disagree that the statute requires the full-throated affidavit that the sisters argue for.

Code § 64.2-102(4) requires only an "alleg[ation]" of parenthood.  If Parker alleges that she is

Givens' daughter, then it necessarily follows that she alleges that Givens is her father.  So,

Parker's declaration under oath, that she is Givens' daughter, is an allegation of parenthood and

---

[5] The affidavit required by Code § 64.2-102(4) is not included on the list of potentially relevant evidence.  The sisters only objected to the sufficiency of the affidavit when Parker offered it as an exhibit at trial.  As no party has called the timing of this objection into doubt, we assume without deciding that the sufficiency of the affidavit was properly questioned through the objection to the exhibit at trial.

sufficient under Code § 64.2-102(4). In the context of the broader statutory framework, this allegation under oath, coupled with a timely-filed action seeking adjudication of parenthood, is all that is required to allow a court to proceed to the adjudication of parenthood. It is only at this later trial stage that more detail about the claim of parenthood, or other evidence, is required.

We also disagree that Parker's affidavit can be dismissed as a mere "list of heirs," or that *Belton* requires a different result. To explain why, we briefly look to Code § 64.2-509(A), which requires a personal representative of the decedent, or proponent of the will, to file a sworn "list of heirs" "in accordance with a form provided to each clerk of court." The clerk is required to "record the list of heirs in the will book and index the list in the name of the decedent and the heirs." Code § 64.2-509(C).

In *Belton*, the administratrix filed a list of the decedent's heirs with the circuit court clerk "identifying herself as [decedent]'s wife and [Belton] as his daughter" born out of wedlock within a year of the decedent's death. 273 Va. at 370. Two years later, the administratrix filed an amended list of heirs, omitting Belton's name. *Id.* A year later, Belton petitioned to establish herself as the biological daughter of the decedent. *Id.* Belton argued that the original list of heirs filed by the administratrix could fulfill the affidavit requirement and that the time period for her to file a separate legal action to adjudicate paternity was tolled by the filing of that affidavit. *Id.* at 370-71, 373. The court "assum[ed] without deciding . . . that the original list of Crudup's heirs was the type of 'affidavit' contemplated by Code § 64.1-5.1(4),"[6] and also "assum[ed]

---

[6] Code § 64.1-5.1(4) is the precursor statute to Code § 64.2-102(4). It was identical to the current code section, except for the italicized language in the following excerpt, which does not affect the affidavit requirement.

> No claim of succession based upon the relationship between a child born out of wedlock and a parent of such child shall be recognized *in the settlement of any decedent's estate* unless an affidavit by such child or by someone acting for such child

- 7 -

further that the Administratrix acted on Belton's behalf when she filed it," but rejected the argument that the time period to file an action had been tolled. *Id.* at 372-73. The court did not reach the question of what makes an affidavit "sufficient." Thus, we find no support for the sisters' position there.

Parker filed an affidavit under Code § 64.2-102(4) stating her full name, address, and age, and designating herself "the decedent's heir-at-law." Crucially, the affidavit described her "relationship" to Givens as "daughter." The affidavit was signed and sworn to by Parker and signed by a Notary Public. Because her affidavit "alleg[ed] parenthood" by stating that she is the daughter of the decedent and was filed within one year of Givens' death, we find that Parker satisfied the requirements of Code § 64.2-102(4).

II. The court did not err in admitting the DNA test report into evidence.

The sisters next argue that the court erred by admitting the DNA test report into evidence "based solely" on the sisters' response to Parker's request for admissions that "the document speaks for itself." We "review[] the circuit court's decisions regarding the admissibility of evidence for abuse of discretion." *Jones v. Commonwealth*, 71 Va. App. 70, 85 (2019). "A discretionary decision in which 'the court has a range of choice' will not be reversed 'as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 86 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)).

Litigants are entitled "to introduce all competent, material, and relevant evidence that tends to prove or disprove any material issue in the case, unless that evidence violates a specific

---

> alleging such parenthood has been filed within one year of the date of the death of such parent in the clerk's office of the circuit court of the jurisdiction wherein the property affected by such claim is located and an action seeking adjudication of parenthood is filed in an appropriate circuit court within said time.

*Belton*, 273 Va. at 371 (quoting Code § 64.1-5.1(4)).

rule of admissibility." *Barkley v. Wallace*, 267 Va. 369, 373 (2004). One "condition precedent" to admissibility is complying with the rule of authentication, which "is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901. To "streamline [the] presentation of proof at trial," parties may stipulate in advance to the authentication of evidence under Rule 4:11(a). 1 Kent Sinclair, *Virginia Civil Procedure* § 12.13 (Lexis 2024). Under this rule, a party may request that another party admit the truth of a matter related to the case, "including the genuineness of any documents described in the request." Rule 4:11(a).[7] An admission that "there is no issue as to the genuineness or foundation of planned exhibits" has the effect of "speeding and easing the presentation of those exhibits at the trial." 1 Sinclair, *supra*, § 12.13.

Before trial, Parker sent a request for admissions to the sisters, asking them to "[a]dmit that the document attached hereto as Exhibit A is a true, authentic, accurate, and admissible copy of the DNA Test Report evidencing that Clayton Paul Givens is the biological father of Rachel Wetzel Parker." The sisters responded that "the document speaks for itself." The trial court concluded that this was not a denial of the matter, and so it was an admission that the document was "a true, authentic, accurate, and admissible copy." While the sisters argued below that this response should not be construed as an admission, they have not advanced the same argument on appeal.[8] Instead, the sisters argue that "[a]t most" their response "established genuineness and

---

[7] The number of requests "relating to the genuineness of documents" is unlimited "unless the court enters a protective order pursuant to the provisions of Rule 4:1(c) upon a finding that justice so requires in order to protect the responding party from unwarranted annoyance, embarrassment, oppression, or undue burden or expense." Rule 4:11(e)(2).

[8] While the sisters broadly assign error to the court finding their response "constituted an admission," and they argued below that this response should not qualify as an admission, their opening brief does not raise this point or provide any analysis for why the court erred in this regard. *See* Rule 5A:20. Instead, they (incorrectly) argue only that Rule 4:11 cannot be used to obtain an admission of a disputed matter. Therefore, we do not address the trial court's

nothing more" and that the court erred by treating their response as decisive on the question of admissibility at trial.

The sisters agree that a party can use Rule 4:11(a) to obtain an admission that a copy of a document is genuine—that it is true, authentic, and accurate. When Parker moved to admit the exhibit at trial, the trial court considered the foundation, authentication, and relevance of the DNA test report, and concluded that it was admissible. As part of this assessment, the court found that the sisters' admission under Rule 4:11(a) that the DNA test report was an "authentic" copy satisfied the authentication requirement. And while the finding that evidence is authentic "is a necessary but not sufficient prerequisite to the admission of the evidence" such that the proponent still must "compl[y] with all of the other rules of evidence relating to relevance, hearsay, best evidence, etc.," *Canada v. Commonwealth*, 75 Va. App. 367, 377 n.4 (2022), the sisters have not argued that any other rule of evidence renders the report inadmissible.[9]

The record also shows that the court did not admit the document "solely based" on the sisters' Rule 4:11(a) admission or treat the admission alone as "conclusively establish[ing]" the admissibility of the document at trial.[10] Instead, the court found that the document was relevant,

conclusion that a failure to "specifically deny the matter" or "set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter" constitutes an admission under Rule 4:11(a).

[9] The sisters suggest on appeal that there was an insufficient "foundation" for the admissibility of the report, but they do not explain what more would have made the document admissible as a true and correct copy of the DNA test.

[10] While the sisters generally agree that Rule 4:11(a) may be used for stipulations as to the authenticity of documents, they also argue that the veracity of this document was a "disputed matter" and that disputed matters fall outside the permissible grounds of a request for admission under Rule 4:11(a). In making this argument, they point to *General Accident Fire & Life Assurance Corp. v. Cohen*, 203 Va. 810, 813 (1962), which held that requests for admissions were only for the purpose of obtaining facts not in dispute. But Rule 4:11 now requires the opposite result. *See* Rule 4:11(a) (A "party who considers that a matter of which an admission

- 10 -

and an admittedly true and authentic copy of the DNA test report. While the sisters' brief insinuates in some places that the court erred by not requiring expert testimony before the report could be admitted into evidence, the sisters did not assign error to the court's conclusion that the test was relevant and reliable enough to be admitted. As for the *admissibility* of the document, their only assignment of error alleges it was error to admit the document "based solely" on their response to the request for admission.[11] They then assign error to the court's giving any evidentiary *weight* to the report without expert testimony—a matter we take up below. Given these findings, we cannot say that the trial court erred in admitting the exhibit into evidence, and we affirm the trial court's admission of the exhibit.

### III. The trial court did not err in drawing inferences from the DNA test report without expert testimony.

The DNA test was relevant to the trial court's paternity decision that "Parker has established by clear and convincing evidence that she is the legal child of Clayton Paul Givens as evidenced by reliable genetic testing and the other exhibits and testimony." To cast doubt on this decision, the sisters assign error to the trial court's "drawing inferences from the content of" the DNA test report without expert testimony. The sisters argue that the trial court was not permitted to give weight to the report without extrinsic evidence of the reliability of the DNA

---

has been requested presents a genuine issue for trial *may not*, on that ground alone, object to the request." (emphasis added)).

[11] "Assignments of error are the *core* of the appeal." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017). Where an issue is not presented in an assignment of error, it is waived. *Simmons v. Commonwealth*, 63 Va. App. 69, 75 n.4 (2014). Even so, we note that under Code § 29-49.3(A) and (C), "in any matter in any court in which the question of parentage arises," "[t]he results of a scientifically reliable genetic test, including a blood test, may be admitted in evidence when contained in a written report prepared and sworn to by a duly qualified expert . . . ." The DNA test result here was accompanied by an affidavit of testing results signed by the laboratory director, an explanation of results, and documentation of the chain of custody.

- 11 -

test—specifically, expert testimony explaining the meaning of the results and the procedure to obtain the results—and of the chain of custody of the report.

We review the trial court's decision to give weight to the report for an abuse of discretion. "It is well established that the trier of fact ascertains a witness'[s] credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness'[s] testimony." *Khalid-Schieber v. Hussain*, 70 Va. App. 219, 234 (2019) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). "In short, the trier of fact determines the credibility and weight of the evidence." *Anderson v. Anderson*, 29 Va. App. 673, 687 (1999).

The sisters point to no case law that requires a court to consider expert testimony in determining the weight to give a piece of scientific evidence. As addressed above, the sisters raised only a narrow challenge to the court's admission of the DNA test report – that it was improper to find that the document was authenticated by their Rule 4:11(a) admission. Once a document is admitted, a trial court is entitled to give it weight based on the testimony heard at trial, the credibility of witnesses, the foundation laid for admittance, and other indicia of the document's genuineness. *See Khalid-Schieber*, 70 Va. App. at 234-35. "A challenge to an 'expert's measurements, methods and determinations . . . does not render inadmissible expert opinion based on those measurements, methods and computations' but goes to the 'weight of the evidence,' raising 'factual questions to be determined by the jury.'" *Castillo v. Commonwealth*, 70 Va. App. 394, 439 (2019) (quoting *Hubbard v. Commonwealth*, 12 Va. App. 250, 255 (1991)).

The court did not abuse its discretion in giving weight to the DNA test report, which stated that there was a 99.9997% probability that Givens was Parker's father. Having concluded that the DNA test was admissible, and without any evidence or argument as to why the test was

not reliable, the circuit court as fact finder was entitled to draw inferences from this report. "Expert testimony is admissible 'when it concerns matters not within the ordinary knowledge of the [factfinder]' such that it may assist the [factfinder]'s understanding of the evidence presented." *Dowdy v. Commonwealth*, 278 Va. 577, 600 (2009) (quoting *Payne v. Commonwealth*, 277 Va. 531, 542 (2009)).  The court could have drawn from its existing knowledge about DNA tests, or relied on other facts in evidence, to properly accord to the test at least some weight in the paternity determination without an expert witness to explain precisely how the testing worked and what the results meant.  Although DNA evidence is far from perfect and expert testimony may have helped the trial court understand why this particular DNA report was more or less reliable, we cannot say that the trial court erred by drawing *any* inference from the report or considering it along with the other evidence of paternity.[12]

CONCLUSION

For these reasons, we affirm. [13]

*Affirmed*.

---

[12] The sisters also suggest that the court could not draw any inferences from the report without information about the chain of custody for the alleged blood sample.  They only assigned error, however, to the trial court's drawing "inferences from the content of Exhibit 9 without expert testimony."  Below, the sisters argued the failure to show the chain of custody made the DNA test report less reliable.  Even assuming this argument is subsumed within their assignments of error, the failure to present evidence about the chain of custody would simply be another matter relevant to the "weight" of the evidence and one left to the ample discretion of the trial court.

[13] Parker asks us to consider several assignments of cross-error.  Because we affirm the trial court, we need not consider these cross-errors.