**In the Interest of J.J.R., A Child.**

**No. 07–82–0307–CV.**

Court of Appeals of Texas, Amarillo.

April 9, 1984.

Rehearing Denied May 15, 1984.

West Texas Legal Services, Patricia Ann Moseley, Lubbock, for appellant.

James D. Weems, Levelland, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Margarita Rodriquez (herein Rodriquez) brings this appeal from an adverse judgment in a paternity suit filed by her against appellee Joe R. Hernandez (herein Hernandez).

Rodriquez is the mother of the child J.J.R., who was born out of wedlock on March 28, 1978. She brought this action under Tex.Fam.Code Ann. § 13.01 et seq. (Vernon Supp.1984), alleging Hernandez was the biological father of the child and seeking to establish the parent-child relationship between Hernandez and the child.

In the case at bar, the trial court ordered blood tests to be taken and appointed the Lubbock General Hospital Blood Bank personnel under the direction of Dale F. Rector, M.D. to perform the tests. The mother, the alleged father and the child submitted to the test. The testimony of Dr. Rector was taken and the results of the test were introduced at a pre-trial conference. At that conference, Dr. Rector testified that the blood tests failed to exclude Hernandez as a possible parent and that "greater than ninety percent" of the general population of men would be excluded by those results. He further testified that the results of tests such as this had "a high degree of reliability." No other testimony was produced at the pre-trial conference.

Based upon the evidence there produced, the trial court entered a finding that the test failed to show by clear and convincing evidence that Hernandez was not the father of the child. The case then proceeded to bench trial.

At the bench trial, Rodriquez and Hernandez testified. Rodriquez testified that at the time of the child's conception she was engaged in a sexual relationship with Hernandez and not with any other man. At that time, she said, she and Hernandez were dating "on a steady basis" and saw one another "about three or four times a week." After she discovered she was pregnant, she told Hernandez and he said he would "help me out," would pay the hospital bill and wanted the child named after him. She said their relationship continued until December of 1977, at which time it terminated. She also testified that Hernandez had given her one hundred dollars in August, 1977 to apply on the doctor bill. She also stated that in March, 1979 subsequent to the birth, Hernandez had come to see the child and admitted to her that the child was his.

Hernandez admitted that he had known Rodriquez for "something like ten years." However, he specifically denied any sexual relationship, any knowledge of Rodriquez' pregnancy, any promises to assist Rodriquez or the giving of any such assistance and he denied ever admitting the child was his.

After hearing the testimony, the court entered the judgment from which appeal is taken. Upon request, the court entered findings of fact that the child was born out of wedlock on March 29, 1978 to Rodriquez and that Rodriquez and Hernandez were both residents of Sundown, Hockley County, Texas during the probable time of conception but that Hernandez had not had sexual relations with Rodriquez during the crucial period. He also found that blood tests were performed upon the parties and the child. As conclusions of law, the court found: (1) blood tests did not show by clear and convincing evidence that Hernandez was not the father of the child, and; (2)

Rodriquez had failed to prove by a preponderance of the evidence that Hernandez was the father of the child.

Rodriquez raises nine points of asserted error. In points one through three, she attacks the judgment of the court that Hernandez was not the father of the child. In points four through six, she attacks the trial court's conclusion of law number two wherein the court concludes that Rodriquez failed to prove Hernandez the father of the child by a preponderance of the evidence. In points seven through nine, she challenges the finding of the court that Hernandez did not have sexual relations with Rodriquez during the crucial time.

■ Points one and two, four and five, and seven and eight attempt to mount "no evidence" and "factually insufficient evidence" challenges to the court actions therein referred to. In asserting her "no evidence" points, Rodriquez misperceives the nature of the court's findings and its judgment. Properly understood, these actions are failures or refusals to find from a preponderance of the evidence the facts which Rodriquez had the burden to affirmatively establish, and simply mean that Rodriquez failed to discharge the burden of proof placed upon her in this case. *See In the Interest of J.A.K.*, 624 S.W.2d 355 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966). Therefore, the failures to find the facts necessary to Rodriquez' recovery need not be supported by evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973).

■ However, notwithstanding the wording of these points, after considering all of the statements and arguments under these points one and two, four and five, and seven and eight, we believe that, within the teaching of *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943), Rodriquez also contends she established Hernandez' paternity as a matter of law. However, Hernandez' denial of sexual access is sufficient to raise a fact issue thereby foreclosing any such assertations.

Points three, six and nine raise "against the great weight and preponderance" questions as to the matters to which reference is therein made. Points raising this type of question require this Court to weigh all of the evidence and to remand the matter for new hearing if we conclude the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Traylor v. Goulding, supra.*

The procedures involved in a suit to establish paternity are specifically set out in Tex.Fam.Code Ann. §§ 13.01–13.09 (Vernon Supp.1984).* The first step prescribed is the taking of blood tests by court appointed examiners. §§ 13.02, 13.03. After the tests are completed, a pre-trial conference is to be held between all parties and the court. §§ 13.04, 13.05. The purpose of the conference is for the court to determine whether the blood tests show by clear and convincing evidence the alleged father is not the father of the child. § 13.05. If the tests fail to show the alleged father is not the father of the child, the case is then set for trial. § 13.05(b). If the suit is ordered to proceed to trial and the jury, or the court if there is no jury, finds the alleged father is not the father of the child, the court shall, as was done here, enter an order declaring that finding. § 13.08(b).

Because of their close relationship, Rodriquez briefs and argues her points three and six together and we will likewise consider and discuss them jointly. The thrust of her argument here is that when the court made the pre-trial finding that the blood tests did not exclude Hernandez as a possible father of the child, she had met a requirement to establish by "clear and convincing evidence" the right to proceed to trial. She then points out that to prevail at the trial on the merits she was only required to establish her entitlement by a "preponderance of the evidence." There-

---

* Unless otherwise indicated, all references are to chapter and sections of the Tex.Fam.Code Ann.

(Vernon Supp.1984).

fore, she continues, "having met the higher standard of proof in order to proceed, the appellant's burden of production of evidence to tie appellee to the probability of fatherhood should be met by her testimony coupled with the blood testing results." Based on that premise, she says that since Hernandez' "self-serving and inconsistent testimony" is the only basis for the court's judgment and conclusion of law 2, those findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. We disagree.

The finding required in § 13.05 is merely a finding that the tests required do not exclude "by clear and convincing evidence" the possibility of fatherhood by the alleged father. The only question presented to the court at that time is whether the asserted father could not possibly biologically have fathered the child. Rather than placing a requirement upon the mother, the practical effect of the statute is to require the alleged father, to establish by "clear and convincing evidence" by means of the blood test that he could not have been the father in order to be discharged at that time. If he does not do so, the question is then presented as to whether the alleged father, as one who could have biologically fathered the child, was indeed the father. This question is, by statute, expressly reserved for decision by the trier of fact after consideration of all relevant testimony, in addition to the blood test, produced at trial on the merits.

■ In determining the question presented in this case, the trial court had before it the conflicting testimony of the interested witnesses. It was within the sole province of the trial judge as trier of fact to observe the demeanor of the witnesses, to judge their credibility, and to determine the weight to give to their testimony. *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678, 685 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The trial judge was authorized to disbelieve the mother and to determine how much weight to give her testimony. The blood test is, in the final analysis, merely another piece of evidence to be considered by the trier of fact, and the trial court, in the pursuance of that role, was entitled to decide how much weight to give the blood test in light of its judgment of the mother's credibility. To hold otherwise would be to assign a weight of infallibility to the results of a chemical test which would undermine the classic role of the trier of fact, a step which we are not prepared to take.

■ A court of appeals may not pass upon the credibility of witnesses or substitute its findings for those made by the trial judge or jury, as the case may be, nor may it substitute its judgment for that of the trier of fact, even though after reviewing the evidence it may have reached a different conclusion from that of the jury or the trial judge sitting without a jury. *Ryan v. Morgan Spear Associates, Inc., supra.*

As authority for her contentions under these points, Rodriquez places primary emphasis upon the case of *Martinez v. Dept. of Human Resources, etc.*, 620 S.W.2d 805 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). We think that case can be distinguished from the case at bar. While the court did place some emphasis upon the results of the blood test as evidence supporting the mother's testimony, the question there presented was whether or not the evidence was sufficient to support a finding in favor of the mother. That is a situation quite different from the instant case wherein the mother has failed to convince the trier of fact. Any statements made in *Martinez* about the weight of a mother's testimony in establishing paternity, even if uncorroborated, were not only dictum but were made in the context of the question there presented.

■ The trial court's judgment and supporting conclusion of law here attacked were based upon a resolution of conflicting evidence. After review of all the record, we do not find them to be so against the great weight and preponderance of the evidence here produced as to be manifestly unjust. Points of error three and six are overruled.

In point nine, Rodriquez attacks the trial court's finding of fact that Hernandez did not have sexual relations with Rodriquez during the critical time frame. In this point she raises an "against the great weight and preponderance" contentions. Our discussion of Rodriquez' points one and three renders unnecessary any separate extensive discussion of these points.

The record reveals that the trial court made its decision from a resolution of conflicting testimony. As we stated above, this appellate court may not pass upon the credibility of the witnesses or the weight to be given the evidence, nor may we substitute our judgment for that of the trial court. After review of the pertinent evidence, we do not find the action of the trial court to be so against the great weight and preponderance of the evidence as to be manifestly unjust.

There being no reversible error, the judgment of the trial court is affirmed.