In re ESTATE OF Ricardo CHAVANA,
Jr., Deceased.

No. 04–97–00904–CV.

Court of Appeals of Texas,
San Antonio.

April 28, 1999.

Anthony C. McGettrick, Law Offices of Francisco J. Saldana, Jr., Laredo, for appellant.

R. Stephen McNally, Law Offices of R. Stephen McNally, Austin, for appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice and CATHERINE STONE, Justice.

### OPINION ON APPELLEE'S MOTION FOR REHEARING

Opinion by: PHIL HARDBERGER, Chief Justice.

On rehearing, we withdraw our prior opinion and judgment and substitute this opinion and judgment for the sole purpose of clarifying that Elsa was required to prove Chavana's paternity by a preponderance of the evidence, not clear and convincing evidence, on her motion for summary judgment. We affirm the trial court's granting of summary judgment in favor of Elsa.

This is an appeal from a ruling on cross-motions seeking a declaration of intestate

heirship. The ruling attempted to resolve a dispute that has been ongoing since 1985 between the son ("Ricardo") and two daughters ("Elsa" and "Gloria") of Ricardo Chavana, Jr. ("Chavana"). The trial court held that laws in effect in 1985 unconstitutionally discriminate between legitimate and illegitimate children and cannot be used to deny Chavana's daughters a share of his estate. Ricardo appeals, arguing that an earlier decision by this court that putatively dismissed the constitutional claims remains "the law of the case." We affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

When Chavana died in 1985, he left three children, none of whom were born to him during a marriage. Chavana married Ricardo's mother some time after the boy was born, and this marriage legally established Ricardo's paternity. The marriage to Ricardo's mother was brief, and Ricardo did not have much, if any, of a relationship with his father for the first ten years of his life.

Chavana never married the women who gave birth to his two daughters, Elsa and Gloria.[1] However, Chavana acknowledged all three as his children during his lifetime, and the record reveals no real dispute between the parties that they are half-brother and sisters, sharing Chavana as a father.

Each of the children asserted heirship rights at probate. Ricardo argued that, because he was the only child legally legitimated under the 1985 statute, his sisters could not inherit. Elsa argued that the 1985 statute was unconstitutional. She also argued that she and Gloria had been equitably adopted. Although there was no proof that Chavana had not left a will, the trial judge held that he had died intestate. The judge also ruled against the daughters

on both the constitutional and equitable adoption claims. Elsa appealed.

This court held that the trial court had been premature in determining that Chavana had died intestate. *See Guajardo v. Chavana,* 762 S.W.2d 683 (Tex.App.—San Antonio 1988, writ denied). We remanded the case for a factual determination of that point. It is important to note that we *completely reversed* the trial court's judgment, holding that any determination of heirship was premature before intestacy was properly established. *Id.* at 684–85. However, we also made the following statement at the end of its introductory paragraph: "The appellant's other arguments [i.e., the constitutional and equitable adoption points] lack merit." *Id.* at 684.

In 1997, Judge Vasquez determined, after hearing evidence, that Chavana had died intestate. Judge Vasquez also declared that the three children were to share Chavana's estate equally, apparently with his widow,[2] on the basis of a 1991 Texas Supreme Court decision that declared the 1985 provision on legitimacy unconstitutional. *See Dickson v. Simpson,* 807 S.W.2d 726 (Tex.1991). Ricardo appeals, arguing that (1) the trial court erred in granting his sisters' motion for summary judgment on the issue of heirship; (2) the trial court erred in holding that his sisters are the children and heirs of Chavana; and (3) the trial court erred in denying his motion for summary judgment.

## RICARDO'S SUMMARY JUDGMENT MOTION

In 1985, the Texas Probate Code set forth three methods for establishing a right to inherit as a child of the deceased: (1) proof that the claimant was born or conceived before or during the marriage of her father and mother; (2) proof that the claimant was legitimized by court decree; and (3) a statement of paternity executed by the father. *See* TEX. PROB.CODE ANN.

---

1. Elsa has brought all appeals in this case in her name, although this court held earlier that, because the case was *in rem,* all holdings would also apply to Gloria.

2. The judgment did not recite the widow as an heir, but the parties agree that, under intestacy laws, she would inherit.

42(b) (amended by Acts 1987, 70th Leg., ch. 464, § 1, eff. Sept. 1, 1987). Ricardo has established paternity under the first of these methods: his parents were married some time after his birth. Elsa and Gloria have not established paternity by any of these methods.

▓ Generally, the statutory language in effect at the time of the death of the decedent governs the disposition of his estate. *Dickson v. Simpson,* 807 S.W.2d 726 (Tex.1991). However, in 1991, the supreme court declared that the 1985 statute was unconstitutional and refused to apply it, even though it was the law in effect at the time of the decedent's death. *Dickson,* 807 S.W.2d at 727. The supreme court followed the United States Supreme Court in elevating the standard of reviewing laws that discriminate between legitimate and illegitimate children to intermediate scrutiny. *Id.; see Reed v. Campbell,* 476 U.S. 852, 855–56, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986). Under that standard, a law can only be upheld if it is substantially related to an important government interest. *Dickson,* 807 S.W.2d at 727. The court noted that the U.S. Supreme Court had already invalidated the use of marriage or voluntary statements of paternity as the sole means to establish heirship as unconstitutional. *Id.; see Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982). In addition, the court stated that "the statutes which govern this case are not substantially related to the furtherance of [the state interest in the orderly administration of estates]." *Dickson,* 807 S.W.2d at 727. In *Dickson,* the court adopted a two part test for determining the constitutionality of heirship laws: the law must provide a fair opportunity for illegitimate children to establish heirship and there must be an evident and substantial relationship between the denial of heirship and the state's interest in the just and orderly administration of probate. *Id.; see Reed,* 476 U.S. at 855–56, 106 S.Ct. 2234.

As in our case, the appellant in *Dickson* could not prove paternity by marriage or by a statement of paternity. *Dickson,* 807 S.W.2d at 727. Her only option was to show that she had been declared the decedent's child by court decree. This option provided slim hope. *Id.* The statute required that the decree be issued as required by former chapter thirteen of the Texas Family Code (now found at Tex. Fam.Code Ann. § 160.002 (Vernon 1996)). Under that provision in 1983, a child could institute a paternity action only before she was twenty years old (earlier statutes had required that the child be under one year (1975) and then that the child be under four years (1981)). *Id.* The appellant in *Dickson* was forty-two at the time the one-year statute was passed, forty-six when the four-year statute was passed, and forty-eight when the twenty-year statute was passed. *Id.* She "never had the opportunity to institute an action to determine whether [the decedent] was her father." *Id.*

Ricardo makes two arguments for his proposition that *Dickson* does not control this case: first, he argues that the case is governed by the "law of the case" as set forth in our original opinion in *Guajardo* and the "writ denied" notation. Second, he argues that, in any event, *Dickson* was, in part, wrongly decided because a putative child had four years after the passage of the 1979 amendment of the Family Code to seek a court decree of paternity.

### Law of the Case

▓ Ricardo argues that this court affirmed the trial court's determination of intestate heirship when it stated that all Elsa's other points were "without merit." *See Guajardo,* 762 S.W.2d at 684. According to Ricardo, this sentence created the "law of the case," and must be followed in all subsequent litigation.

▓ "The law of the case doctrine" provides that when a question of law is decided on appeal by a court of last resort,

that decision governs the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986); *Pitman v. Lightfoot*, 937 S.W.2d 496, 512 (Tex.App.—San Antonio 1996, writ denied). The public policy purposes of the doctrine are to narrow the issues in the successive stages of litigation and to promote uniformity. *Hudson*, 711 S.W.2d at 630. Courts generally view the doctrine, which does not have its roots in either statute or constitution, to be discretionary. The amount of discretion a court should use in deciding whether to apply it is debatable.[3] In this case, the court is being asked to apply the law of the case to reach an unconstitutional result.[4] This we cannot do.

■■ The law of the case either does not or should not apply here. This court completely reversed the trial court and sent the case back not only for a determination of whether Chavana died intestate, but also for a determination of his heirs, should the trial court find that he had any. A reversed judgment cannot create rights. *Gonzalez v. Texas Employers Ins. Assoc.*, 509 S.W.2d 423, 426 (Tex.Civ.App.—Dallas

1974, writ ref'd n.r.e.). Moreover, this court remanded the case without instructions. Where a case is remanded without instructions, the case stands on the trial court's docket as though it had never been tried. *Hallmark v. Hand*, 885 S.W.2d 471, 476 (Tex.App.—El Paso 1994, writ denied). Because the basis of the court's opinion was the lack of evidence concerning whether a will existed, the "without merit" statement is dicta.[5] *See Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313 (Tex. App.—San Antonio 1994, writ ref'd) (refusing to give effect to court's own prior dicta, especially where it was wholly unsupported). In addition, we specifically stated, "Since we have determined the testacy of the estate of Richard Chavana, Jr., has not been determined, it is unnecessary that we pass on the adoptive status of appellant." *Guajardo*, 762 S.W.2d at 685. We did not specifically address the constitutional claims.

■ Second, *Dickson* is supervening and controlling law. Even if the law of the case should be applied to our prior statement, *Dickson* overrules it.[6]

---

3. Courts vary between and among themselves as to how strictly they apply the doctrine. *See Zavala v. State*, 956 S.W.2d 715, 718 (Tex. App.—Corpus Christi 1997) (doctrine is required by neither statute nor constitution and may be disregarded if "compelling circumstances" dictate); *Gonzalez v. San Jacinto Methodist Hosp.*, 905 S.W.2d 416, 420 (Tex. App.—El Paso 1995) (although doctrine is discretionary, courts should be mindful of its policy purposes), *rev'd on other grounds sub nom*, 922 S.W.2d 928 (Tex.1996); *Brown Forman Corp. v. Brune*, 893 S.W.2d 640, 648 (Tex.App.—Corpus Christi 1994) (application of doctrine is to be flexible); *Huckabay v. Irving Hosp. Auth.*, 879 S.W.2d 64, 67 (Tex. App.—Dallas 1993) (law of case does not apply to dicta). Two universally recognized exceptions are applied when the earlier holding is "clearly erroneous" or when the later stage of litigation presents different parties, different issues, or more fully developed facts. While the court of criminal appeals has held that the law of the case applies even to implied holdings of law, *Garrett v. State*, 749 S.W.2d 784, 784 n. 1 (Tex.Crim.App.1986), at least one court of appeals has held that it does

not apply to dicta. *Huckabay*, 879 S.W.2d at 67.

4. In her Second Supplemental Response to Motion for Summary Judgment, Elsa states that she found only one case where the law of the case was attempted to be used to controvert the constitution. *See Goo v. Fat*, 35 Haw. 827, 829 (Haw.1941). The Hawaiian court rejected the attempt. *Id.*

5. Arguably, this court did not even have jurisdiction to issue the dicta, since we held that the trial court had no jurisdiction to determine heirship prior to a determination of intestacy.

6. Our supreme court has stated:
 The whole case is before us with no change of parties. It would be unthinkable for this Court, after having granted the writ, reconsidered the case, and arrived at the conclusion that the opinion on the former appeal was clearly erroneous, to hold that it is bound by considerations of consistency to perpetuate that error. Our duty to administer justice under the law, as we conceive it, outweighs our duty to be consistent.

In *McCrea v. Cubilla Condominium Corp.*, 769 S.W.2d 261 (Tex.App.—Houston [1st Dist.] 1988), the court of appeals reconsidered an earlier judgment in which it had affirmed a take-nothing judgment in part on the basis that the appellant's agreement with his condominium corporation included no implied warranties. *McCrea*, 769 S.W.2d at 262; *see McCrea v. Cubilla*, 685 S.W.2d 755 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). At the remand trial in the case, the appellant raised breach of express warranties, and the trial court again entered a take-nothing judgment. Appellant appealed that ruling and also argued on appeal that the appellate court's prior opinion had been erroneous because the supreme court had recently decided a case holding that the implied warranty to repair in a good and workmanlike manner may not be waived. *See id.* at 263; *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex.1987). According to the appellant, the law of the case should not be applied.

The court of appeals agreed. "Where the decision on a former appeal was clearly, *or was later held to be*, erroneous or where, as here, a subsequent applicable standard has been established by the Texas Supreme Court, the 'law of the case' doctrine will not necessarily apply." *McCrea*, 769 S.W.2d at 263; *Barrows v. Ezer*, 624 S.W.2d 613, 617 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). The court remanded the case to allow the appellant to litigate his implied warranty claims. *McCrea*, 769 S.W.2d at 264.

In *McCrea*, there was a clear holding that was contrary to supervening Supreme Court law, and the court of appeals rejected the "law of the case" doctrine in favor of the supervening law. It would be incongruous to hold in the instant case that this court's unsupported line of dicta should control over an intervening supreme court case, especially where this court did not in any way affirm the trial court's original determination of heirs. Judge Vasquez

could not have ruled contrary to the Supreme Court in order to comply with this court's putative holding.

The "writ denied" notation on our earlier opinion should not be given res judicata effect on any dicta in the case. "Writ denied" means that, whether the supreme court believed the appellate court was in all aspects correct, there is no error that requires reversal or that is of such importance to the jurisprudence of the state as to require correction. *Tarango v. Liberty Mut. Fire Ins. Co.*, 823 S.W.2d 717, 718 (Tex.App.—El Paso 1992, no writ); *see also Trevino v. Turcotte*, 564 S.W.2d 682, 685 (Tex.1978). The holding of this court was that a trial court was without jurisdiction to declare heirship before it had determined that the decedent died intestate. It was this holding that the supreme court based its writ denied notation on. In light of the trial court's lack of jurisdiction on the heirship issue, it would have been inappropriate for the supreme court to grant writ on the constitutional issues. We cannot and should not presume that the court passed on all dicta in our prior opinion.

### Dickson

As Elsa points out, in 1979 when the probate code was amended to allow court-decreed heirship, a child could establish his or her rights viz-á-viz a putative father in two ways: the new heirship decree, provided by the amendment, under former Family Code chapter 13, and an action for child support under U.S. Supreme Court case law. *See Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). *Gomez* did not confer inheritance rights, and the 1979 amendment provided that the *only* way to establish such rights was through a chapter 13 decree.

Ricardo argues that, in *Dickson*, the supreme court did not address the lower court's reasoning that a child born

Connecticut General Life Ins. Co. v. Bryson, 148 Tex. 86, 219 S.W.2d 799, 800 (1949).

before the 1979 statute governing court-decreed heirship was protected by the general four-year statute of limitations. *See Dickson v. Simpson,* 781 S.W.2d 723, 725 (Tex.App.—Austin 1989), *rev'd,* 807 S.W.2d 726 (Tex.1991); TEX. CIV. PRAC. & REM.CODE ANN. art. 5529 (repealed and replaced by TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997).

In the appellate court's opinion, the appellant in *Dickson,* even though born outside marriage before 1975 (the effective date of the non-retroactive chapter 13), could rely on the general four-year statute of limitations and establish heirship in the years between 1979 (the year the probate code allowed decrees as proof of heirship under chapter 13) and 1983 (four years later).[7] *Dickson,* 781 S.W.2d at 725.

Ricardo claims that the supreme court in *Dickson* failed to address the possibility that the four-year statute applies. He claims that, if it does apply, Elsa and Gloria would have been able to establish paternity under the Family Code in the years between 1979 and 1983. Elsa argues that, in reversing the court of appeals and in holding that Chapter 13 completely barred the appellant from filing an heirship claim, the supreme court in fact did address the argument and rejected it.

A case from Corpus Christi, *In the Interest of Sicko,* 900 S.W.2d 863 (Tex.App.—Corpus Christi 1995), helps clarify the matter. In that case, a 57–year–old plaintiff filed a paternity suit in district court for the sole purpose of establishing paternity. *Sicko,* 900 S.W.2d at 864. The court of appeals held that, because the Family Code provision stating that paternity must be established before a child's first birthday did not apply to children born before 1975 and because the amendments moving

the age to four and then to twenty-two were never available to the plaintiff who, in 1983 (the date of the last amendment) was forty-seven, the four-year statute of limitation applied to his suit. *Id.* at 865. This would seem to support Ricardo's argument that Elsa must have established paternity sometime between 1979 and 1983.

However, the Corpus Christi court was compelled to respond to the appellant's argument that its holding would deny him his right to heirship under the Probate Code, in contravention of *Dickson. Id.* at 866. The court stated that in the case before it, the appellant sought no judicially enforceable right, such as child support or inheritance. *Id.* The court concluded that *Dickson* and the amended probate code now provided a solution to the predicament the appellant claimed: *illegitimate children may petition the probate court for a determination of a right to inherit without regard to a paternity action under the Family Code. Id.* (emphasis added). The court stated that by barring his paternity claim, it was not automatically disinheriting the appellant. *Id.* Whether the four-year statute applies is irrelevant; to enforce a right to inherit, a claimant born to a single mother may seek relief in the probate court.

 We find the analysis set forth in *Sicko* to be persuasive. The actions mandated by both *Dickson* and the amended Probate Code are independent from the paternity suit authorized by the Family Code. A child born to a single parent cannot be denied the judicially enforceable right to lay claim to an estate on the basis of legitimacy unless the denial is substantially related to an important state inter-

---

7. Some courts, addressing paternity suits (not heirship suits), have held this to be the case. *See Perry v. Merritte,* 643 S.W.2d 496 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Texas Dep't of Human Resources v. Delley,* 581 S.W.2d 519 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Levescy v. Crocker,* 585 S.W.2d 337 (Tex.Civ.App.—Dallas 1979, writ ref'd

n.r.e.). Other courts have held that the only action available to a child born before 1979 was in common law, under *Gomez. See Wynn v. Wynn,* 587 S.W.2d 790 (Tex.Civ.App.—Corpus Christi 1979, no writ); *In the Interest of C.D.V.,* 589 S.W.2d 543 (Tex.Civ.App.—Amarillo 1979, no writ).

est. This enforceable right is separate from the right to establish paternity (a right that, in Texas, is not vested) and the right to seek support (which is enforced through different means). This right could not be asserted any earlier than it was, because heirship can only be determined once someone has died. The action must be brought at the time of probate, and this is what Elsa has attempted to do.[8]

Even if we were to hold that the four-year statute of limitations provided Elsa a reasonable opportunity to assert her claim under the Family Code, Ricardo would still have to meet the second half of the *Dickson* burden: provide proof that the classification is substantially related to the State's interest in an orderly probate. *See also Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (holding that time limitation on period for establishing paternity must present "reasonable opportunity" to assert claims *and* be substantially related to an important government interest). Since the daughters asserted their claims from the beginning, with little or no disruption to the proceedings, Ricardo cannot credibly meet this burden.[9]

### ELSA'S SUMMARY JUDGMENT MOTION

Having established that the trial court did not err in applying *Dickson,* we must still determine if summary judgment in favor of Elsa's heirship claim was appropriate. In other words, assuming *Dickson* applies, has Elsa established, by summary judgment proof, that she and Gloria are rightful heirs to Chavana's estate?

The amended probate code allows for two types of paternity for heirship purposes: presumed paternity and paternity found by clear and convincing evidence in the probate court. *See* TEX. PROB. CODE ANN. § 42(b) (Vernon Supp.1998).[10] Although *Dickson* recognizes a constitutional right to a establish heirship via hearing, it does not require the court to retroactively apply section 42(b) to find heirship by clear and convincing evidence if the decedent died before the amendments to the Probate Code. Rather, the probate court may find heirship upon proof by a preponderance of the evidence under such circumstances. *See In the Interest of J.J.R.,* 669 S.W.2d 840, 842 (Tex.App.—Amarillo 1984, writ dism'd); *see also Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 209 (1950). *Cf. Spiers v. Maples,* 970 S.W.2d 166, 171 (Tex.App.—Fort Worth 1998, no writ).

As summary judgment proof that she and Gloria are Chavana's biological parents, Elsa submitted affidavits executed by the daughters, as well as an affidavit sworn to by Ricardo, stating that the three are the only biological descendants of Chavana. She also submitted an affidavit swearing to the same by Chavana's sister. The motion lists many documents in which Ricardo had pleaded or acknowledged the girls' biological relationship to Chavana. Finally, Elsa submitted a letter (signed "Tu Dad") and newspaper article sent to her by Chavana, and copies of the checks Chavana mailed to each of the children

---

8. The decision we reach today is factually distinguishable from our holding in *Cantu v. Sapenter,* 937 S.W.2d 550 (Tex.App.—San Antonio 1996, writ denied). In *Cantu,* we found that the state's interest in the orderly administration of probate accommodates reasonable limitations on heirship claims. 937 S.W.2d at 552–53. We applied the four-year residuary statute of limitations to bar the alleged child in *Cantu's* claim for inheritance rights where she waited eleven years from the date of her alleged father's death to present her claim. *Id.* Unlike the plaintiff in *Cantu,* Elsa has clearly asserted her rights from the initiation of probate proceedings immediately following her father's death.

9. In *Jeter,* the U.S. Supreme Court held that when a state passes a statute allowing an heirship hearing at probate, it is impliedly admitting that the hearing does not interfere with orderly proceedings. *Id.* at 465, 108 S.Ct. 1910.

10. These amendments are to apply prospectively only. However, *Dickson,* which declared the earlier statute unconstitutional, was issued in 1991, after the 1987 and 1989 amendments effecting the change. *Dickson* thus created a *constitutional* right to establish heirship via hearing.

when, during his lifetime, he sold some property. The checks divide, equally among the children, the proceeds of that sale. The motion establishes paternity by a preponderance of the evidence.

In response to Elsa's motion, Ricardo presented evidence supporting his claim that the case was governed by the 1985 Probate Code and the law of the case as established by this court. He did not argue or present any evidence that Gloria and Elsa were not Chavana's children.

Because both the law of the case argument and the Probate argument fail in the light of *Dickson*, Ricardo did not rebut Elsa's summary judgment evidence. The trial court was correct to grant her motion.

### CONCLUSION

Ricardo's arguments regarding the correctness of *Dickson* are without merit. The crux of this case is whether this court's dicta in the earlier case, coupled with the "writ denied" notation by the supreme court, are sufficient to require us to reach an unconstitutional result. They are not. The judgment of the trial court is affirmed.