NO. 07-05-0319-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 19, 2006



______________________________


 

CAROLYN PACE, APPELLANT



V.



BAPTIST ST. ANTHONY'S HOSPITAL CORPORATION, D/B/A


BAPTIST ST. ANTHONY'S HEALTH SYSTEM-BAPTIST CAMPUS, APPELLEE


_________________________________



FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;



NO. 90,563-C; HONORABLE PATRICK A. PIRTLE, JUDGE


_______________________________




Before REAVIS and CAMPBELL and HANCOCK, JJ.

ORDER


 Following a jury trial, appellant Carolyn Pace perfected this appeal from the trial
court's judgment that she take nothing in her suit against Baptist St. Anthony's Hospital
Corporation, d/b/a Baptist St. Anthony's Health System-Baptist Campus, for personal
injuries sustained while an invitee. The clerk's record was filed on October 14, 2005, and
a supplemental clerk's record was filed on December 5, 2005. The reporter's record was
originally due on October 17, 2005, and has yet to be filed. Following expiration of the
initial deadline, by letter dated October 25th, this Court requested, pursuant to Rule 13.4
of the Texas Rules of Appellate Procedure, that Debby Murphy, Official Court Reporter for
the 251st District Court of Potter County, complete and return a reporter's status form or
file a request for extension of time by November 4th. No response was received, and on
November 8th, this Court sent a second letter reminding Ms. Murphy to respond within ten
days, indicating that failure to do so might result in an appropriate order.

 On November 15th, Ms. Murphy notified this Court by letter of her extensive
caseload and also mentioned a software key malfunction which she anticipated would be
corrected within a few days. Regarding the record in this appeal, she provided, "[a]s this
transcript is almost finished, it will not take me long to complete it once I have this key." 
Ms. Murphy, however, did not file a request for extension of time nor indicate that payment
of the record had not been made, and the Court sua sponte granted an extension to
December 22nd. 

 After the December 22nd deadline lapsed, on January 6, 2006, Ms. Murphy was
again notified by letter of the missed deadline and directed to complete a status report by
January 17th. To date, neither a report nor response has been filed. 

 Accordingly, we now order Debby Murphy, Official Court Reporter for the 251st 
District Court of Potter County to transcribe and file with the Clerk of this Court a reporter's
record as required by the Texas Rules of Appellate Procedure encompassing cause
number 90,563-C. The record shall include all argument, evidence, and exhibits presented
to the court during trial, as well as any pretrial and post-trial hearings conducted in said
cause. We further order Ms. Murphy to file the reporter's record in a manner by which it
will be actually received by the Clerk of this Court on or before noon on Monday, February
6, 2006. No further motions for extension of time will be considered. 

 Failure to file the reporter's record as directed by this Court's order may result in one
or more of the following:

 (1) a hearing requiring Debby Murphy to show cause why she should not be
held in contempt;

 (2) a complaint to the Court Reporter's Certification Board;

 (3) appropriate sanctions; or

 (4) abatement to the trial court for appropriate action.


 It is so ordered.

 Per Curiam



ning the
latter element, Lubbock Gasket asserts through its third issue that it showed itself entitled
to judgment since it established how much damages it suffered via its motion for summary
judgment. Yet, we note that its motion did not address the topic of breach. This may be
so since it believed that we had settled the issue of breach during the first appeal, and
having allegedly resolved that element, it apparently believed that it need not have
addressed the matter again. We overrule both issues.

 As a result of the prior appeal, we reversed and rendered that portion of the trial
court's judgment imposing liability on First United for its alleged conversion of property and
negligence. First United Bank v. Panhandle Packing & Gasket, Inc., 190 S.W.3d at 19-20. 
However, that portion of the judgment "regarding Panhandle Packing's contract claim on
its deposit agreement [was] reversed and the cause [was] remanded for further
proceedings." Id. at 20. As can be seen, in remanding the proceeding we provided the
trial court with no specific instructions. When that occurs, the issue or cause of action
remanded stands as if it had never been tried. In re Estate of Chavana, 993 S.W.2d 311,
315 (Tex. App.-San Antonio 1999, no pet.) (stating that when the appeal is reversed and
remanded without instructions, then the matter stands as if it has never been tried);
Hallmark v. Hand, 885 S.W.2d 471, 475-76 (Tex. App.-El Paso 1994, writ denied) (stating
the same). So, because the claim of breached contract had to be treated as if it had not
been tried, not only was the trial court obligated to address both the elements of liability
and damages but also Lubbock Gasket was required to address both in its summary
judgment motion before the trial court could even consider whether to grant a summary
judgment against First United. See Tex. R. Civ. P. 166a(c) (stating that the movant must
establish its entitlement to judgment on the issues "expressly set out in the motion"); Cook-Pizzi v. Van Waters & Rogers, Inc., 94 S.W.3d 636, 643 (Tex. App.-Amarillo 2002, pet.
denied) (stating that the grounds on which the movant relies for summary judgment must
be stated in the motion).

 Summary Judgment for First United

 Next, we turn to the second and final issue pending for review. It concerns whether
the trial court erred in granting First United's motion for summary judgment. We conclude
that it did not and overrule the issue. 

 First United sought summary judgment on several grounds, one of which implicated
§4.406(f) of the Texas Business and Commerce Code and the doctrine of waiver. (1) Section
4.406(f) states that:

 Without regard to care or lack of care of either the customer or the bank, a
customer who does not within one year after the statement or items are made
available to the customer . . . discover and report the customer's unauthorized
signature on or any alteration on the item is precluded from asserting against
the bank the unauthorized signature or alteration.


Tex. Bus. & Com. Code Ann. §4.406(f) (Vernon 2002). Statute permits the parties to modify
this provision and other portions of Chapter 4 of the Business and Commerce Code, in
certain respects, and the parties apparently did so here and included the changes in their
depository agreement. See id. §4.103 (stating that "the effect of the provisions of [chapter
4 of the Code] may be varied by agreement, but the parties . . . cannot disclaim a bank's
responsibility for its lack of good faith or failure to exercise ordinary care . . . ."). Though
debate exists between the parties regarding which of two depository agreements admitted
into evidence controlled the outcome here, both nevertheless contain language imposing
upon the account owner (or Lubbock Gasket) a duty to report to First United certain
discrepancies or problems concerning its account. For instance, that which First United
deems controlling stated that Lubbock Gasket was to "carefully examine [its] statement and
report any errors, unauthorized withdrawals or transfers, forgeries, or alterations . . . within
60 days of when the statement [was] first made available [and if] no report is made . . .
within such time, [it] waive[d] [its] right to contest any withdrawals or transfers so disclosed
. . . ." In turn, the contract that Lubbock Gasket considers binding stated that the customer
was to "carefully examine [the] statement and report any errors, forgeries, or alterations to
[the bank] as soon as possible, but, in no event, later than 60 days after the statement is
made available. . . ; if no report is made . . . within such time, [it] waive[d] [its] right to
contest the payment of any items so disclosed . . . ." As can be seen by comparing the two
provisions, both encompass the reporting of "errors." So too do both effectively result in the
loss of any claim by the customer arising from the "errors" should those "errors" go
unreported within the prescribed time. And, in comparing these provisions to the allegations
and pivotal facts at issue, we cannot but hold that the circumstances before us fall within
the penumbra of those agreements.

 Lubbock Gasket complains of its bookkeeper omitting a restrictive endorsement, i.e.,
"for deposit only," from the back of various checks, then presenting to First United those
checks for payment, and converting the cash proceeds received from First United. 
Assuming arguendo that the bookkeeper was not authorized to so endorse the checks, the
undisputed evidence illustrates that Lubbock Gasket knew that she omitted the restrictive
phrase from the endorsement on various of the checks in question. Indeed, Lubbock
Gasket's treasurer and chief financial officer discovered the omission while perusing
company bank statements. He then spoke with Kimbrell, was told by her that it involved
"only four or five checks a . . . month," said nothing to First United about the purportedly
defective endorsement, and decided not to worry "about it." This same officer also testified
that the missing deposits and machinations of Kimbrell could have been discovered had the
bank statements and checks of the several accounts over which he exercised control been
reconciled and compared. 

 Next, and also assuming arguendo that First United was obligated to know of the
deficient endorsements (even though Lubbock Gasket's chief financial officer opted not to
worry about them or inform First United), one cannot reasonably dispute that cashing the
checks instead of complying with an unmentioned restrictive endorsement constituted an
"error" on the part of First United. Moreover, and as previously mentioned, these missing
deposits were susceptible to discovery through reconciliation of the bank statements. Given
this, Lubbock Gasket was obliged to report the "errors" within the time prescribed in the
deposit agreements, and it does not dispute on appeal whether it did so. (2) See Willis v.
Willoughby, 202 S.W.3d 450, 452 (Tex. App.-Amarillo 2000, pet. denied) (stating that the
appellant had the burden to negate on appeal each potential ground for summary
judgment). 

 In sum, Lubbock Gasket did not negate the validity of each ground upon which
summary judgment could have been founded. Since it did not, we affirm the decree. We
further restrict our holding to the specific facts involved in this case. No opinion is voiced
upon situations wherein the bank customer lacked access to and control over all the bank
statements and checks which would have disclosed the error.


 Brian Quinn

 Chief Justice
1. Because several grounds were mentioned in First United's motion for summary judgment and the
trial court did not specify upon which ground it relied in granting the motion, it is encumbent upon Lubbock
Gasket to establish on appeal that none supported the decision. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989). 
2. To the extent that Lubbock Gasket cites §4.406(e) of the Business and Commerce Code as basis
for arguing that First United was barred from claiming waiver because it acted in bad faith, we note that
§4.406(e) alludes to preclusion asserted under §4.406(d). First United, however, invoked preclusion under
§4.406(f), as modified by the deposit agreement. So, §4.406(e) does not apply.